EDITH NORRIS ET VIR V. HAL H. VAUGHAN.

No. A-3977. Decided July 22, 1953.
(260 S. W. 2d Series 676)

492

R. H. *Cocke,* of Wellington, and *Richard H. Cocke,* of Dallas, for petitioners.

The Court of Civil Appeals erred in holding that the dry gas rights and lease interests acquired by respondent during his marriage to petitioner's mother, as well as the wells drilled thereon and the income and profits therefrom prior to the marriage was not community property. Jones v. Trapp, 186 Fed 2d 851; Stephens v. Stephens, 292 S. W. 290; Chatman v. Allen, 15 Texas 278.

*Reynolds & Harding,* of Shamrock, *Culton, Morgan, Britain, & White,* and *L. A. White,* of Amarillo, for respondent.

Oil and gas are a part of the corpus of the land, and revenues from the sale of oil and gas produced from a mineral interest purchased from the separate funds belong to the separate property of the owner of the interest from which the production is had. Springfellow v. Sorrells, 82 Texas 277, 18 S.W. 689; Swayne v. Lone Acre Oil Co., 98 Texas 597, 86 S.W. 740; State v. Hatcher, 115 Texas 332, 281 S.W. 192.

MR. JUSTICE SMITH delivered the opinion of the Court.

The respondent, Hal H. Vaughan and Beaulah Hunsaker were married on August 16, 1941, and they lived together as husband and wife until the death of Mrs. Vaughan on May 17, 1947. The petitioner, Mrs. Norris, is the daughter of Mrs. Vaughan by a former marriage. Mrs. Vaughan died intestate, and Mrs. Norris is her sole and only heir. Petitioner admits in her pleadings that respondent was the owner of certain properties in his own separate right, but contends that this property was natural gas producing and that the income, as the result of gas production, after the date of the marriage of her mother to Mr. Vaughan, was and is community property. It was further alleged by petitioner that all of the property involved was in the possession of the respondent, and that a full and complete accounting, which she requested be made by respondent, would disclose that she owned an interest in property acquired between the dates of August 16, 1941 and May 17, 1947.

Prior to his marriage to petitioner's mother, the respondent owned as his separate estate:

(a) A 7/8ths determinable fee, as lessee, in seven producing gas wells, known as the "Pakan Wells";

(b) A 1/4th interest in the Shamrock Gas Co., a partnership;

(c) A 1/4th interest in the Vaughan Well Co., a partnership;

(d) A 1/2 interest in the partnership of Pendleton & Vaughan.

During the period of coverture the partnership of Pendleton & Vaughan drilled ten gas wells, seven of which were producers. These wells are known as the McDowell and Taylor wells. The Vaughan Well Co. drilled two producing gas wells, known as the Hill and Cantrell wells.

The respondent went to trial on his second amended original answer wherein he alleged that certain property was his separate property, and that certain other property was community property. A full discussion of the contention of the parties and the facts relating thereto will be given later in this opinion in disposing of the points presented to this Court for determination.

On March 21, 1950, the trial court, on its own motion, appointed an auditor, who prepared and filed a complete audit and inventory of all transactions enumerated in the order of the court, and the cause proceeded to trial on December 11, 1951. A jury was empaneled, but on the 13th day of December, 1951, by agreement of the parties, the jury was discharged, and the Court, after hearing the evidence, entered its judgment on March 10, 1952, awarding to the petitioner a community interest in the wells known as the McDowell and Taylor wells, and a house situated on Lots 11, 12 and 13, Block 50, of the Woodley Southside Addition to the town of Shamrock, Wheeler County, Texas. All other property involved was declared to be the separate property of the respondent and judgment was entered accordingly in his favor.

All parties excepted to the judgment and an appeal was duly perfected to the Court of Civil Appeals for the Seventh Supreme Judicial District of Texas, which court reversed and rendered the portion of the trial court's judgment which awarded to petitioner an interest in the McDowell and Taylor wells, and affirmed the judgment of the trial court as to the separate property. It also reversed and rendered judgment for petitioner for

the title and possession of an undivided one-half interest in and to Lots 11, 12 and 13, Block 50, of the Woodley Southside Addition to the town of Shamrock. All parties agree that petitioner is entitled to this community interest.

Petitioner's second point attacks the judgment of the Court of Civil Appeals wherein it held that profits from gas wells owned by respondent prior to the marriage was not community property. Their first point urges that the dry gas rights and lease interests acquired by respondent during his marriage to petitioner's mother, as well as the wells drilled thereon, were community property, and that it was error for the Court of Civil Appeals to hold otherwise.

■ We will first consider the petitioner's contention that profit from the sale of natural gas produced from the respondent's separate gas wells is community property. Respondent owns, as lessee, seven wells producing natural gas in the "Pakan" area. These wells were acquired in 1937 and a "life of production" sales contract for all the gas produced by these wells was made with Lone Star Gas Co. in 1939. After the wells were connected to the Lone Star Pipe line there was little or no effort required in their management or operation. It is well established in Texas that the lessee in the usual oil and gas lease obtains a determinable fee in the oil and gas in place, and thus an interest in realty. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas 160, 254 S. W. 290, 29 A.L.R. 566; Hager et al. v. Stakes, Tax Collector, et al., 116 Texas 453, 294 S. W. 835; Stephens v. Stephens, Texas Civ. App., 292 S. W. 290. The lessee's determinable fee interest will last only so long as oil or gas is produced, and it is a matter of judicial knowledge that oil and gas producing territory will become exhausted in time. U. S. v. Ludey, 274 U.S. 295, 71 L. Ed. 1054, 1055. Therefore, production of this natural gas will in time exhaust the gas reserves which comprise the separate estate. Production and sale of the natural gas in this instance is equivalent to a piecemeal sale of the separate corpus, and funds acquired through a sale of separate corpus, if traced, will remain separate property. Love v. Robertson, 7 Texas 6; Rose v. Houston, 11 Texas 324; Gleich et al. v. Bongio et al., 128 Texas 606, 99 S. W. 2d 881. When royalty is paid for oil or gas produced from the separate property of the lessor, the courts of this state have held that such royalty is payment for the extraction or waste of the separate estate and therefore remains separate property. Lessing v. Russek, Texas Civ. App., 234 S. W. 2d 891; Texas Co. v. Parks,

Texas Civ. App., 247 S.W. 2d 179; Bantuelle v. Bantuelle, Texas Civ. App., 195 S. W. 2d 686. The theory advanced in these cases being that royalty is payment for the extraction or sale of the minerals that comprise the separate estate.

As said in the case of Kellett v. Trice, 95 Texas 160, 66 S. W. 51, 53 "Property of the husband and wife in this state gets its character as belonging separately to one of them or in common to both from the statutes defining their separate and community estates". See Articles 4613 and 4619, Vernon's Annotated Civil Statutes.

Petitioner relies on Article 4619, supra: "Sec. 1. All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved. * * *"

The petitioner admits that while the gas was in place it was separate property and an interest in land, but she advances the argument that when it was produced the profit on the sale was community income. It is petitioner's theory that if the gas had been sold in place it would have unquestionably remained the separate property of respondent and could not be considered in any sense as property acquired during the marriage, but that the production and selling of the gas changes the status of the property from separate to community, and that the proceeds should be classed as property acquired during marriage, and having assumed this to be true, she advances the further theory that the property thus classified is presumed to be community property, *in the absence of a showing to the contrary.*

■ The first question for us to determine so far as the "Pakan" wells are concerned is this: Does oil and gas in place when it has been produced from separate property remain separate property and a part of the corpus, or should it be classed as community income? The second question which naturally follows is this: Does this record show any community effort on the part of either the husband or wife in connection with the production from the "Pakan" wells?

The holding in the case of Stephens v. Stephens, supra, is to the effect that so long as separate property can be definitely

traced and identified it remains separate property regardless of the fact that the separate property may undergo "mutations and changes." We are in accord with this view. The opinion quotes with approval the Supreme Court of Wyoming in the case of State v. Snyder, 29 Wyo. 163, 212 Pac. 758, 762. In that case the Court said in part:

"Oil and gas, while in situ, are part of the realty; part of the corpus of the land. When a portion of it is taken away, the proceeds necessarily arise out of the corpus, and it is humanly impossible to change that simple, plain, physical fact. The character of the proceeds can, obviously, at least as between the beneficiaries, in no possible manner be changed by the nature of the documentary authority pursuant to which the oil and gas is taken out of the ground. Documents do not possess the power of an alchemist; neither do they wield a magician's wand. Whether the oil be taken out of the ground pursuant to a license, lease, sale, or any other grant, or without any authority whatever, could not in the slightest degree affect the physical fact that it comes from the corpus of the land. If taken and disposed of at all, the effect is clearly a permanent disposition of that much of the corpus, the principal of the land, and, irrespective of the authority pursuant to which that is done, the proceeds must go to the beneficiaries according to the rights existing between them."

The principle announced in the Stephens case, supra, applies with equal force to the present case. In that case, the party claiming the property involved to be separate property was the lessor in an oil and gas lease which provided that the lessee should pay to the lessor an equal 1/8th part of the oil produced and saved from the leased premises. In the present case, respondent was the lessee in the oil and gas leases covering the "Pakan" area. In the Stephens case the court held that the acts on the part of lessor in executing the lease and receiving the proceeds for his part of the oil produced did not convert his separate estate into community property. It further held that "no skill, labor, or supervision of either of the spouses, and no community property was expended in the sale or production".

■ This brings us to a consideration of petitioner's contentions in regard to the "Pakan" wells that, even if the gas produced is to be considered respondent's separate property by virtue of being a sale of the separate estate, communtiy labor, talent and funds were expended on its production and sale, thus impressing community character upon the gas. This is a well recognized

theory, and the cases cited by petitioner as supporting this proposition deal with problems such as the making of bricks from clay extracted from separate land, Craxton v. Ryan, 3 Willson, Civil Cases § 367, and finished lumber sawed from separate timber, White v. Hugh Lynch & Co., 26 Texas 195. In these cases it is obvious that a great deal of community effort was required to transmute the separate property into a new and more valuable state. In the instant case petitioner seeks to prove the expenditure of community effort and funds by evidence that some $9,146 was spent in repair and upkeep of these "Pakan" wells. Revenue from these wells was kept in Vaughan's separate bank account and the expense items were drawn from this account or deducted from gas runs prior to payment. The trial court ,in its judgment, found as a fact "that there was no comingling of funds received by Hal H. Vaughan during this marriage period as all of the books and accounts show that all of the funds, both separate and community, were readily traceable from the audit of his books". There was no showing that community funds were used in these maintenance operations. Respondent's uncontroverted testimony is that he made only one trip to the "Pakan" area during the period of his marriage, and that the wells required no management. He entered into the contract with the Lone Star Gas Co., and thereafter had nothing to do with the leases, except to collect for his part of the gas produced. It is petitioner's burden to prove an expenditure of community effort so as to impress community character upon the separate asset. We therefore hold that since there was not such an expenditure of community funds or effort as to impress community character on the gas produced from the "Pakan" wells and the $80,661 received as profit, the gas produced and the proceeds therefrom remain separate property.

■ The next asset to be considered is the respondent's one-fourth interest in the Shamrock Gas Co. This partnership maintained distribution facilities and retailed natural gas to residences in and around Shamrock, Texas. This Company buys its natural gas from the Vaughan Well Co. and owns no gas producing property of its own. Respondent acquired his interest in this partnership prior to his marriage and his interest therein would be his separate property. During the period of coverture the respondent drew some $28,100 in salary and profits from the Shamrock Gas Co. Such sums were community funds as income and salary from a business enterprise, but respondent's interest in the partnership retains its separate nature. Hardee v. Vincent, 136 Texas 99, 147 S. W. 2d 1072.

Respondent also owned a one-fourth interest in a partnership known as the Vaughan Well Co. This partnership's sole business is the acquisition of gas wells by drilling under lease agreements and selling as production to the Shamrock Gas Co. Prior to the marriage this partnership owned three producing gas wells, known as the O'Gorman No. 1 and No. 2 and the Sims well. As in the case of gas produced from the "Pakan" wells, the exhaustion of the gas reserves owned by the partnership prior to marriage is an invasion of the assets comprising respondent's separate estate. As to the matter of community labor or talent utilized in the production of the natural gas produced by these wells, Art. 4613, V. A. C. S. gives the husband the sole right to manage, control, and dispose of his separate property. Reasonable control and management is necessary to preserve the separate estate and put it to productive use. In the instant case the production and maintenance operations on these gas wells are necessary to their use and preservation and are in the nature of reasonable control and management of the separate estate. Thus, community character would not be impressed upon these wells by means of respondent's activities in relation to production and maintenance. The same reasoning is applicable to the maintenance operations on the "Pakan" wells. We therefore hold that respondent's interest in the Sims and O'Gorman wells remain separate property.

■ We will next consider the question of ownership of two other wells, known as the Hill and Cantrell wells. These wells were drilled by the Vaughan Well Co. and the right to drill the wells was secured under and by virtue of certain oil and gas leases executed after the date of marriage of respondent. The Hill lease was executed July 31, 1945 by Guy Hill and wife, Estelle Hill, as lessors to A. N. and B. F. Holmes, as lessees.

The Cantrell lease was executed April 23, 1946 by C. G. Cantrell and wife, Ovilla Cantrell, as lessors to B. F. Holmes, as lessee. The lessees in these two leases later assigned to respondent a one-fourth interest in these leases in recognition of the one-fourth interest which he owned in the Vaughan Well Co., a partnership. The leases were taken in the name of A. N. and B. F. Holmes, for the benefit of the four partners, A. N. Holmes, B. F. Holmes, W. S. Pendleton and Hal H. Vaughan. The principles of law which we believe control our disposition of the controversy with reference to these two wells will be applicable in deciding the petitioner's contention that the community obtained an interest in the gas wells drilled by Pendle-

ton & Vaughan during the period of coverture. Pendleton & Vaughan drilled ten gas wells, known as the McDowell and Taylor wells, under "farmout" agreements with Magnolia Oil Company. By the terms of these agreements Magnolia would assign certain of its lease interests to Pendleton & Vaughan upon the completion of a well on the lease area. Negotiation and acquisition of the "farmout" agreements were made after the respondent's marriage, and were at least partially due to his talent and labor. In Speer on Law of Marital Rights in Texas, p. 461, Sec. 379, it is said: "* * The community rights may attach to any beneficial estate * * * whether perfected or merely inchoate * * *." The community acquired the right to drill the Hill and Cantrell wells under the oil and gas leases heretofore mentioned, and negotiations and acquisition of the "farmout" agreements (the McDowell and Taylor wells) were entered into with Magnolia Oil Company after the respondent's marriage. The Hill and Cantrell oil leases recite a cash consideration of Five ($5.00) Dollars, and Ten ($10.00) Dollars, respectively, and delay rental payments of $160.00 and $83.55, respectively, and the assignments of these leases executed on December 20, 1948 and December 13, 1948, respectively, each recite a consideration of "One Dollar and other good and valuable considerations". These assignments were executed after the death of Mrs. Vaughan, but it is clear that respondent actually owned the interest assigned on the dates the two leases were executed. In acquiring the leases in the name of one member of the partnership, the effort, talent and skill put forth by that member is just as though the respondent, Hal H. Vaughan, had exercised such activities.

The community's acquired rights were fixed and determined at the time the oil leases were executed and the "farmout" agreements were entered into. The community rights thus acquired cannot be nullified merely because the respondent elected to use separate funds in drilling the Hill and Cantrell wells under the oil and gas leases, and in carrying out his agreement with reference to the McDowell and Taylor wells.

■ In the case of De Blane v. Hugh Lynch & Co., 23 Texas 25, the court said:

"The principle which lies at the foundation of the whole system of a community property is, that whatever is acquired by the joint efforts of the husband and wife, shall be their common property * * *."

The court, after announcing this principle of law, continued by saying:

"If a crop is made by the labor of the wife's slaves on the wife's land, it is community property, because the law presumes that the husband's skill or care contributed to its production; or, that he, in some other way, contributed to the common acquisitions."

Any property or rights acquired by one of the spouses after marriage by toil, talent, industry or other productive faculty is community property. Logan v. Logan, Texas Civ. App., 112 S. W. 2d 515. Therefore, the right to drill the McDowell and Taylor wells and the Hill and Cantrell wells was a community asset and the dry gas rights obtained by the drilling of the wells are community in nature. The separate estate would be entitled to reimbursement by the community estate for funds expended in behalf of the community. Dakan v. Dakan, et al., 125 Texas 305, 83 S.W. 2d 620; Snodgrass v. Robertson, Texas Civ. App., 167 S.W. 2d 534. The respondent contends that all funds expended in drilling the McDowell and Taylor wells by the partnership of Pendleton & Vaughan were separate funds, and that no community funds were so used. Respondent is only entitled to reimbursement for all sums spent out of his separate estate in drilling the wells, and all operating expenses spent in the production and management of the wells after drilling commenced.

■ Since we have held that the community's acquired rights were fixed and determined at the time the "farmout" agreements were entered into, it naturally follows that petitioner is entitled to an interest in the McDowell and Taylor wells. The trial court decreed that the community estate owned an undivided 169/512ths interest in the dry gas rights acquired by Pendleton & Vaughan under the "farmout" agreements with Magnolia Oil Company. Title vested as of the date of the acquisition of the right to drill the gas wells, and the fact that respondent might have expended separate funds in the drilling, operating and management of these wells would not affect the title thus acquired. The proceeds from the sale of gas from these wells would be community property and not separate property. We hold that the community estate acquired a 169/512ths interest in the McDowell and Taylor well, subject to reimbursement to the separate estate of its share of the cost of drilling these wells, and payment of its proportionate share

of the partnership operating and management expenses from the date of drilling McDowell Well No. 1.

■ As was held in Dakan v. Dakan, supra, (125 Texas, 305, 83 S.W. 2d 627) "the final determination of the rights of the respective parties is to be determined upon equitable principles as to the amount of reimbursement." All sums which may be shown by the respondent to have been spent by him out of his separate estate when definitely determined will be in the nature of a charge against the community estate. Likewise, if it should be determined by the trial court that any community funds were expended in connection with the drilling and operation and management of these wells, the community is entitled to credit for such sums so expended. "The judgment must give to all the parties all the relief to which they may be entitled." Dakan v. Dakan, supra. For the purpose of ascertaining the exact sum expended by respondent out of his separate estate and the sum expended out of the community estate, it is necessary to remand these issues to the trial court.

Respondent also alleges that the Hill and Cantrell wells were drilled by Vaughan Well Co. by the use and expenditure of the separate funds of respondent and his associates, and that the community acquired no interest in these wells. Since community effort, skill and labor was exerted in the acquisition of the right to drill the wells, the community acquired a 1/8th interest in the oil and gas leases covering the Hill and Cantrell wells, subject to reimbursement to the separate estate of its share of the cost of drilling these wells, and payment of its proportionate share of the partnership expense in production and management. The record discloses the gas sales from the wells separately from May 17, 1947 to 1951, but for the years 1945 and 1946 the record combines the receipts from the five gas wells, which includes the Sims and O'Gorman wells. To determine the amount to which respondent may be entitled as reimbursement, and the total gas production and sales from these wells, it is necessary that this phase of the case be remanded to the trial court. In determining these matters the trial court will be governed by the rules of law hereinabove announced with reference to the McDowell and Taylor wells.

■ The final problem to be considered is the $10,971 reimbursement awarded by the trial court for separate funds expended for community living expenses. It is fundamental that the husband is obligated to furnish support for the community living

and if no community funds are available he should utilize his separate funds. Callahan v. Patterson, 4 Texas 61; Coggin v. Coggin, Texas Civ. App., 204 S. W. 2d 47. It is his duty to provide for the community and in this instance he chose to expend a portion of his separate estate so that the community standard of living could be as it was. Separate funds spent for community living in such a manner should be deemed a gift to the community for its well-being and use. Allowing a right of reimbursement at a later date would be inconsistent with the fundamental concept that a man should provide for his home and community.

From what has been said, that part of the judgment of the Court of Civil Appeals with reference to the Hill and Cantrell wells is reversed and judgment here rendered that petitioner recover an undivided 1/8th interest in and to the Hill and Cantrell wells, and that the case be remanded to the trial court for further consideration in accordance with this opinion.

The judgment of the Court of Civil Appeals in so far as it reverses the judgment of the trial court awarding the petitioner a community interest in the McDowell and Taylor wells drilled by Pendleton & Vaughan is reversed and judgment here rendered awarding to the community estate an undivided 169/512ths interest in the McDowell and Taylor wells.

The judgments of the trial court and Court of Civil Appeals holding that the community estate is indebted to respondent, Hal H. Vaughan, in the sum of $10,971.85 are reversed and judgment rendered that as to this item the respondent shall take nothing. In all other respects the judgment of the Court of Civil Appeals is affirmed.

Delivered July 22, 1953.