## CONE v. CONE.

No. 6329.

Court of Civil Appeals of Texas.
Amarillo.

Oct. 19, 1953.

Rehearing Denied Nov. 23, 1953.

munity estate was entitled to reimbursement as to the enhanced value.

The trial court found that appellee had acquired the leasehold interest by the payment of the sum of $550 and that such payment was made prior to appellee's marriage to appellant. The court further found that the community estate had expended the sum of $105,899.60 in developing and equipping said property for the production of oil and gas and that there were four producing oil wells on the land. Appellee was awarded title to the leasehold interest and appellant was awarded the sum of $52,949.80 as one-half of the community funds expended in developing the lease. Appellant was allowed the further sum of 6 per cent interest on the sum awarded her. From this judgment appellant perfected an appeal and presents three points of error which will be discussed in their numerical order.

■ Appellant's first point of error is that the trial court erred in not holding that the leasehold interest was community property of appellant and appellee. This point is based upon appellant's proposition that since the leasehold was acquired during marriage it was presumed to be community property and that such presumption was not rebutted by the evidence presented by appellee as to the separate character of the leasehold. The sole issue to be determined under this point of error is whether there is evidence of probative force in the record to support the trial court's finding that the title to the leasehold had its inception prior to the marriage of appellant and appellee. The character of appellee's title "whether separate or community, depends alone upon the existence, or nonexistence, of the marriage * * * at the time of the incipiency of the right in virtue of which he acquired title." Colden v. Alexander, 141 Tex. 134, 171 S.W.2d 328, 334.

■ The original oil and gas lease was executed by one Hensley and wife to Major H. Rodgers. The leasehold was then duly assigned by Rodgers to H. L. Lowe. Appellee contended that the incipiency of his right and title to the leasehold was prior

McWhorter, Howard, Cobb & Johnson, Lubbock, Shelton & Shelton, Austin, for appellant.

Crenshaw, Dupree & Milam, Bradley, Key, Carr & Carr, Lubbock, for appellee.

MARTIN, Justice.

Appellant, Adeline Z. Cone, and appellee, S. E. Cone, were married on February 6, 1938. The parties are now divorced and their property rights have been settled other than the $7/8$ working interest in an oil and gas lease covering Labor No. 13 in League No. 42, of the Rains County School Lands in Hockley County, Texas, and containing 111.5 acres. It is appellant's contention that this leasehold interest was acquired during her marriage to appellee and was therefore community property in which she owned a one-half interest. In the alternative she pleaded that if such leasehold was acquired by appellee prior to their marriage and constituted his separate property, that by the expenditure of community time, effort, skill, and funds the leasehold had been enhanced in value and that the com-

to his marriage to appellant and supported this contention by two elements of proof. Appellee introduced evidence that H. L. Lowe on the 30th day of March, 1937, delivered to him an instrument which was in fact an assignment on the oil and gas lease in question but which instrument erroneously described the lease assigned on the specific tract of land as a lease from Rodgers to Lowe rather than a lease from Hensley to Rodgers. Appellee further introduced evidence that H. L. Lowe was not in fact the owner of the leasehold at any time but that appellee had obtained the transfer from Rodgers to Lowe prior to the marriage of appellant and appellee and had paid the entire consideration and that Lowe merely held title to the lease in trust for him, the appellee. The evidence will not be detailed on the issues above other than to point out that Lowe testified that he paid no consideration for the transfer and had never owned the lease and merely permitted appellee to place the assignment of the lease in his name to hold title for the appellee. All the recording fees were paid by appellee and the correspondence with reference to recordation and abstracting was in the name of appellee. All delay rental on the lease was paid by appellee and there was no evidence that Lowe had ever expended anything with reference to the leasehold interest either as to the purchase, recording of instrument, or payment of delay rentals. The evidence further reveals that Lowe never at any time asserted any ownership of the lease, but always recognized the same as being the property of appellee. The evidence will not be further detailed but it is here ruled that the evidence in this record is sufficient to support the trial court's finding that the incipiency of the right in virtue of which appellee acquired his title had its inception prior to the marriage of appellant and appellee. Appellant's point 1 is accordingly overruled. Colden v. Alexander, supra, MacRae v. MacRae, Tex.Civ.App., 144 S.W.2d 320, writ refused; Jackson v. Piper, Tex.Civ. App., 28 S.W.2d 240.

■ Appellant's point 2 asserts that appellee accepted a deed of assignment of the mineral lease from H. L. Lowe during the marriage and that he is estopped to deny the representations made by the grantor in the deed of assignment to the effect that grantor, at the time of the execution of the deed of assignment was the lawful owner of the mineral lease; that he had a good right and authority to sell and warranted the title as conveyed. The authorities cited by appellant on the issue of estoppel correctly set forth the proposition that as between the grantor and grantee of the deed the grantor is estopped from denying the deed and the facts therein recited. It is also recognized that the grantee by accepting a deed is likewise estopped from denying the same as against the grantor. However, appellant was not a party to the deed nor was appellant a privy to the assignment from Lowe to Cone but was a mere stranger to the title. " 'Mutuality being requisite, an estoppel operates neither in favor of, nor against, strangers—this is persons who are neither parties nor privies to the transaction out of which the estoppel arose. * * *' Furthermore, a stranger to a deed, on a theory of estoppel may not establish his title by recitals in such deed." Woldert v. Skelly Oil Co., Tex.Civ.App., 202 S.W.2d 706, 709, Syl. 5–9. Further, "estoppel cannot be invoked as an instrumentality of gain or profit; it can operate only to protect the person invoking it in a right which he has already acquired * *." Kuykendall v. Spiller, Tex.Civ.App., 299 S.W. 522, 527, Syl. 3–6, writ refused.

■ The issue under appellant's second point is not one of estoppel but an issue as to the admissibility of evidence. The trial court found that appellee paid the cash consideration for the transfer of the leasehold interest from Rodgers to H. L. Lowe on March 30, 1937, prior to the marriage of appellant and appellee. H. L. Lowe testified that he merely held the leasehold in trust for the appellee. The evidence was admissible and was sufficient to establish a trust relationship between Lowe and appellee as to the leasehold as of the date of March 30, 1937, and would sustain the appellee's contention that the leasehold was his separate property. Sevine v.

Heissner, 148 Tex. 345, 224 S.W.2d 184. Further, the courts have been liberal in permitting proof as to the nature and source of property and its ownership in suits between a husband and wife. Foster v. Christensen, Tex.Com.App., 67 S.W.2d 246. Appellant's second point of error is overruled.

Appellant's 3rd point of error asserts that community funds in the amount of $105,-899.60 were expended in developing and equipping the Hensley lease which had a value of $2,787.50 at the time development was begun but had a value at the time of the trial of $341,469 and that the trial court erred in holding that all appellant was entitled to receive on divorce was reimbursement to the extent of one-half of the monies advanced by the community in development of the lease; that is, $52,949.80 with interest at 6 per cent from February 22, 1952. This point further asserts that the court wholly disregarded the enhanced value of the property due to its development with community money, and wholly disregarded the use of community time, skill, efforts, credit, and community risk in such development. This point of error raises the principle issue in the controversy and may be adjudicated by a correct application of the principles of law found in the decisions of the appellate courts.

█ Since all the parties agree that the sum of $105,899.60 is the correct amount expended by the community in developing the leasehold interest, the trial court's judgment awarding appellant one-half of said sum in the amount of $52,949.80 is correct if based on a proper rule of law. The Supreme Court of Texas in Norris v. Vaughan, 260 S.W.2d 676, 682, upon the issue of enhancement of community property by the expenditure of separate funds thereon, ruled as follows: "Respondent is only entitled to reimbursements for all funds spent out of his separate estate in drilling the wells, and all operating expenses spent in the production and management of the wells after drilling commenced." Under this ruling of the Supreme Court the trial court correctly awarded appellant one-half

of the community funds spent in the drilling and equipping of the four wells on appellee's separate property. It may be noted that the trial court did not allow any operating expenses spent in the production and management of the wells. There was no pleading of this issue but the record reveals that the sum of $14,181.52 was expended in operating expenses of the leasehold but the source of this payment, whether community or separate, is not revealed. In the absence of proof that the sum expended in operation of the lease was paid from the community estate, the trial court could not correctly adjudicate one-half thereof to the appellant. The issue is not before this court by point of error but it must be observed that the trial court's judgment was correct upon the record.

█ The rule as to enhancement in value of the separate estate which appellant has sought to have decreed here is recognized. Though the case is not cited in this cause, the rule expounded by appellant has been clearly defined by the Supreme Court of Texas in Lindsay v. Clayman, 254 S.W. 2d 777, 781, Syl. 5, in the following language: "The amount of reimbursement is not determined by the cost of the improvements made, but by the enhancement in value of the estate improved by virtue of the improvements made by the other estate. Dakan v. Dakan, supra [125 Tex. 305]; 83 S.W.2d [620] 628(27, 28); * * *." The cases involving this principle of enhancement in value have been read and analyzed. Such cases involve fact issues as to the community estate placing buildings and like improvements upon the separate realty of one of the spouses. The facts in these cases reveal that something was *added to* the separate estate by expenditures of the community estate. (Emphasis added.) The rule of enhancement in value may be applied to a leasehold or mineral estate but it must be clearly recognized that in such a case the expenditure by the community, once production is established, has added no value to the separate mineral estate in place. No citation of authority should be required as to the proposition that oil in place is a part of the realty and that if such

oil is separate property when a part of the realty it remains separate property when produced and separated therefrom. Norris v. Vaughan, supra.

There is a material fallacy in the theory that the community expenditure of $105,899.60 in digging four wells on the leasehold interest enhanced the leasehold in value to the amount of $341,469—the actual value of the oil and gas in place on the leasehold. This is not the same principle as involved in the community estate placing a building upon separate real property. The oil to be produced by means of the four wells was already in place on the leasehold and its value in place was not enhanced by the drilling of the four wells. The four wells did not add to the leasehold estate the minerals already therein and shown to be of the present value of $341,469 in place. The drilling of such wells on the leasehold merely created the means to extract and withdraw from the leasehold estate a part thereof—which mineral estate in place had a fixed value irrespective of the four wells. In any event, it is an inescapable conclusion that the sum of $341,469, the actual value of the oil in place at the time of the suit, is not the proper rule of measurement as to the enhancement in value of the leasehold accruing by reason of the drilling of the four wells. No sound reason exists for taking the value of the oil still in place as being solely the enhanced value of the leasehold by reason of the drilling of the four wells and at the same time wholly disregarding the oil already produced by the same wells in the total value of $318,936.96. Nor can appellant by the principle of enhancement change the oil in place from separate property to community property.

The rule as defined in Norris v. Vaughan, supra, correctly applied by the trial court in this cause, reflects the legal principle which should be applicable where community funds have been used to develop and produce oil from a separate estate. An examination of the record under the principle of enhancement reveals there is no evidence of probative force establish-

ing the enhanced value of the leasehold attributable solely to the community expenditure in drilling the four wells. Appellant's 3rd point of error is overruled.

Appellee's counter-points and cross-assignment of error are likewise overruled. The judgment of the trial court is affirmed.