**TEXAS BELTING & MILL SUPPLY COMPANY, Appellant,**

v.

**C. R. DANIELS, INC., Appellee.**

No. 14754.

Court of Civil Appeals of Texas.

Houston.

March 24, 1966.

creditors of appellant would accept 20 cents on the dollar in payment of appellant's indebtedness and that by its conduct after its original acceptance appellee was estopped to withdraw its acceptance.

The evidence shows that appellant's president on April 8, 1964 met with a group of appellant's larger creditors at the office of Houston Association of Credit Management, Inc., herein called Association, to discuss appellant's financial affairs. It was there determined that appellant was insolvent and it was decided to call a creditors' meeting.

On April 29 a meeting of creditors was held. It was there determined that if appellant went into bankruptcy the creditors would receive less than five cents on the dollar. A creditors' committee was formed. It was proposed that B. G. Wells of Fort Worth would assume responsibility for operating the business, would hold 52% of appellant's stock in escrow and would be paid for his services. If 100% of the creditors accepted, Mr. Wells would own the 52% of the stock. Wells agreed to begin operating the business on May 4, 1964. It was proposed that if 100% of the creditors accepted, 20% of the debts would be paid creditors, the amount to be paid in five installments, the first to be paid July 1, 1965.

Crocker & McDonald, Toy A. Crocker, Fort Worth, for appellant.

Ross, Banks, May & Cron, John A. Cavin, Houston, for appellee.

BELL, Chief Justice.

Judgment was rendered by the court against appellant on an account in the amount of $1,003.39 plus an attorney's fee of $300.00.

Suit was by way of a sworn account. There was no contest of the correctness of the account. The defense was that appellee had accepted a plan submitted by a creditors' committee whereby the unsecured

On May 12, 1964, a letter setting out the proposal was sent the creditors. In the letter it was stated that Mr. Wells had voluntarily consented to begin work on May 4, 1964, but he understood the agreement and his continuing to work was subject to the approval of 100% of the unsecured creditors.

The appellee accepted the proposal about June 16, 1964.

On November 6, 1964, the creditors' committee wrote the creditors that it had been unable to procure the consent of 100% of the creditors and proposed that the original requirement be changed so as to make the composition agreement effective if ac-

cepted by 90% of the creditors. The last paragraph of this letter to the creditors read as follows:

"Should you have any opinion or suggestion which would be of assistance to either the Creditors' Committee or Texas Belting & Mill Supply, please address your replies to Mr. J. D. Wittmayer, Chairman of the Creditors' Committee, * * * The active operation of the business by Mr. B. G. Wells under the reorganization plan will begin immediately and will continue according to the plan unless a notice of exception is received within ten days."

On December 3, 1964, the Creditors' Committee was notified by appellee through its attorneys that it would not accept the last proposal. This was beyond the 10 day period allowed in the letter. Appellant was not notified of such refusal to accept until the day of service of citation in this suit.

On trial Mr. B. G. Wells testified. The substance of his testimony was that he was contacted in April, 1964 about coming from Fort Worth to Houston to investigate appellant's affairs to see if he would be interested in assisting in helping work out appellant's difficulties. He attended the creditors' meeting of April 29, when the terms of the first proposal for a creditors' composition were worked out. On May 4, as proposed, he began working at appellant's business. He continued to work with the business and attended the meeting of November 6. He stated he would not have continued his work if any of the creditors who had accepted the first agreement refused to accept the second proposal. However, he stated that after the 10 day period allowed in the last letter, appellant began to increase its inventory and he loaned money to appellant. Appellant engaged the services of other employees. Mr. Wells moved his family to Houston in September, 1964. Several jobs were contracted by the appellant. They were completed and a profit was made on them. The money loaned by Mr. Wells was both prior to and after the modification agreement. He loaned $4,500.00 after submission of the modification agreement. The only money owed him was advanced after the Committee had been notified of its rejection of the second proposal.

What is thus presented is not that appellant has changed its position to its detriment in reliance on appellee's failure to withdraw its consent given to the original proposal within the 10 day period set out in the modified proposal, but a contention by Mr. Wells that he would not have continued his association with the company if appellee had rejected the modified proposal.

Mr. Wells is not a party to the suit. No liability is asserted against him. He was really not a party to the composition agreement and may not rely on estoppel to create any rights in himself. Cone v. Cone, Tex. Civ.App., 266 S.W.2d 480, writ dism.

Also, the facts in evidence show Mr. Wells did most of his acts prior to the submission of the modification proposal. He really commenced his association in May of 1964, and has continued it. He moved his family to Houston in September, 1964. We find no change of position by Mr. Wells on the strength of appellee's action with regard to the modified proposal.

█ As to the appellant, it is observed that it could not require appellee to accept a composition agreement. Appellee's acceptance of the first proposal was conditioned on its being approved by 100% of the creditors. The condition not having been complied with, no right in favor of appellant was created. When the modified proposal was sent, there was no duty on the part of appellee to act one way or the other. The above statement quoted that the operation would continue if no exception was made within 10 days did not place a duty on appellee to act.

Additionally, there is no evidence that 90% of the creditors ever accepted so as to effect any composition of creditors.

Complaint is made of the allowance of $300.00 attorney's fees. It is admitted that before the proposed composition of creditors demand for payment was made but no additional demand was made before suit was filed. We hold under the facts above recited that no additional demand was necessary.

Affirmed.