TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00521-CV






Michael Maxwell McDaniel, Appellant


v.


Dawn L. McDaniel, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. FM206653, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 Michael Maxwell McDaniel ("Maxwell") challenges the trial court's decree awarding
his former wife, Dawn L. McDaniel, a disproportionate share of the community estate. In his first
six issues, Maxwell contends that the evidence is legally and factually insufficient to support Dawn's
claims for equitable reimbursement and economic contribution, characterization of certain stock
holdings as Dawn's separate property, and calculation of interest earned on the stock holdings during
marriage. In his seventh issue, Maxwell contends that the trial court abused its discretion by
awarding a disproportionate share of the community estate to Dawn. For the reasons set forth below,
we affirm the judgment of the district court.


FACTUAL AND PROCEDURAL BACKGROUND


 Maxwell and Dawn were married in 1997 and during the early part of their marriage
lived in Seattle. They later moved to Austin and built a house on Osprey Ridge Loop in Lago Vista
that cost approximately $1.7 million ("Osprey house"). Part of the funds to build the house came
from Dawn's separate property trust funded by gifts from her father before and during the marriage. 
The McDaniels lived in the house for about two years, then sold it in May 2002 because they could
no longer afford it. They then built another house on Harris Boulevard in Austin ("Harris house"). 
Maxwell and Dawn separated on September 29, 2002, and Dawn filed for divorce on October 1,
2002. They did not have any children.

 In her amended petition for divorce, Dawn sought confirmation of (i) her separate
property and (ii) equitable reimbursement and economic contribution claims for separate property
spent on the community. Maxwell also asserted separate property claims for equitable
reimbursement and economic contribution but abandoned the claims before trial. The parties
proceeded to a bench trial in April 2003. At the two-day trial, financial experts testified for both
sides, giving their opinions about the characterization and division of the property. Maxwell and
Dawn also testified, as well as Dawn's father, who testified about his gifts to Dawn before and
during the marriage.

 In June 2003, the trial court entered an amended decree of divorce and in July 2003
issued amended findings of fact and conclusions of law. These documents provide, in pertinent part:
(i) the parties will divide the net proceeds of the sale of the Harris house, with Maxwell as the listing
agent for the first four months that the house is on the market; (ii) Dawn's trust is her separate
property; (iii) Dawn is entitled to equitable reimbursement claims of $642,409 and $383,567 for
expenditures of separate property benefiting the community, offset by a community equitable
reimbursement claim of $389,872 benefiting Dawn's separate property; (iv) Dawn is entitled to an
economic contribution claim of $277,104 for expenditures of separate property benefiting the
community, with a lien against a $250,000 community certificate of deposit; and (v) money held
back from the sale of Dawn's stock ("MSGI holdback money") is Dawn's separate property, with
interest of $35,736 as community property. Dawn was awarded the $35,736 in interest. Maxwell
was awarded his real estate business. Further, they each retained their retirement accounts, equally
divided the furniture, and shared equally in community tax liabilities and the mortgage until the
Harris house was sold.

 Maxwell filed a motion for new trial, which was overruled by operation of law. He
then filed this appeal. In his first six issues, he contends that the evidence is legally and factually
insufficient to support the findings that Dawn is entitled to equitable reimbursement claims of
$642,409 and $383,567 for expenditures of separate property benefiting the community; Dawn's
separate property is entitled to an economic contribution claim of $277,104 for expenditures of
separate property benefiting the community, including the lien against the $250,000 certificate of
deposit; and the MSGI holdback money is Dawn's separate property that earned $35,736 in interest
as community property. In his seventh issue, Maxwell contends that the trial court abused its
discretion by awarding a disproportionate share of the community estate to Dawn.


ANALYSIS


General Principles about Marital Estates

 Because this appeal concerns the trial court's property division, our review of that
division must be made in the context of the general principles governing the division of property in
divorce cases. Community property consists of the property, other than separate property, acquired
by either spouse during marriage. See Tex. Fam. Code Ann. § 3.002 (West 1998); Barnett v.
Barnett, 67 S.W.3d 107, 111 (Tex. 2001). All property possessed by either spouse during or on
dissolution of marriage is presumed to be community property. Tex. Fam. Code Ann. § 3.003(a)
(West 1998); Barnett, 67 S.W.3d at 111. To overcome the community property presumption, a
spouse claiming assets as separate property is required to establish their separate character by clear
and convincing evidence. Tex. Fam. Code Ann. § 3.003(b) (West 1998). "Clear and convincing"
evidence means the measure or degree of proof that will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be established. In re J.F.C., 96
S.W.3d 256, 264 (Tex. 2002).


Sufficiency of the Evidence

 Six of Maxwell's seven issues challenge the legal and factual sufficiency of the
evidence. In a legal sufficiency review when the burden of proof on an issue is by clear and
convincing evidence, we "should look at all the evidence in the light most favorable to the finding
to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its
finding was true." Id. at 266. If, after conducting our legal sufficiency review of the evidence, we
determine no reasonable fact finder could form a firm belief or conviction that the matter that must
be proven is true, then we must conclude the evidence is legally insufficient. Id.

 In a factual sufficiency review, we must give due deference to evidence a fact finder
could reasonably have found clear and convincing. Id. We should consider whether disputed
evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor
of its finding. Id. If, in light of the entire record, the disputed evidence a reasonable fact finder
could not have credited in favor of the finding is so significant that a fact finder could not have
reasonably formed a firm conviction or belief, then the evidence is factually insufficient. Id. 
Although the trial court issued findings of fact and conclusions of law, because we have a complete
reporter's record, we are not bound by the trial court's findings of fact. Tucker v. Tucker, 908
S.W.2d 530, 532 (Tex. App.--San Antonio 1995, writ denied). Instead, we review the findings of
fact for legal and factual sufficiency of the evidence to support them, under the same standard as
reviewing jury findings. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). We now turn to
Maxwell's challenges to the sufficiency of the evidence.


 Equitable Reimbursement Claims

 In his first and second issues, Maxwell contends that the evidence is legally and
factually insufficient to support the trial court's findings that Dawn is entitled to equitable
reimbursement claims of $642,409 and $383,567 for expenditures of separate property benefiting
the community.

 A party may bring a claim for reimbursement of payments by one marital estate to
satisfy unsecured liabilities of another marital estate. Tex. Fam. Code Ann. § 3.408(b)(1) (West
Supp. 2004). A trial court resolves claims for reimbursement under equitable principles. Id.
§ 3.408(c) (West Supp. 2004). The right of reimbursement "is not an interest in property or an
enforceable debt, per se, but an equitable right which arises upon dissolution of the marriage." 
Vallone v. Vallone, 644 S.W.2d 455, 458-59 (Tex. 1982). Permissible reimbursement may run from
community estate to separate estate, from separate estate to community estate, and from separate
estate to separate estate. Alsenz v. Alsenz, 101 S.W.3d 648, 655 (Tex. App.--Houston [1st Dist.]
2003, pet. denied) (citing Dakan v. Dakan, 83 S.W.2d 620, 627 (Tex. 1935)). "[T]he payment by
one marital estate of the debt of another creates a prima facie right of reimbursement." Penick v.
Penick, 783 S.W.2d 194, 196 (Tex. 1988). But the party seeking reimbursement bears the burden
of proving his or her entitlement to it. Jensen v. Jensen, 665 S.W.2d 107, 110 (Tex. 1984); Vallone,
644 S.W.2d at 459.

 In evaluating a claim for reimbursement, the court shall determine whether to
recognize the claim and order a division of the claim "in a manner that the court considers just and
right." Tex. Fam. Code Ann. § 7.007(b) (West Supp. 2004). The court also should consider any
offsetting benefits to the estate whose assets were expended. Penick, 783 S.W.2d at 197-98; see also
Gutierrez v. Gutierrez, 791 S.W.2d 659, 663 (Tex. App.--San Antonio 1990, no writ) (court must
at least consider offsetting benefits when spouse opposing reimbursement so requests). The trial
court's discretion in evaluating a claim for reimbursement is as broad as that discretion exercised
by a trial court in making a just and proper division of the community estate. Penick, 783 S.W.2d
at 198.

 Maxwell does not dispute that Dawn expended separate property on the community,
nor does he dispute the amounts expended. He instead contends that Dawn is not entitled to the
equitable reimbursement claims because she offered "no evidence at all regarding the benefits
received by her separate estate for the payments she has made benefitting the community estate." 
The court found by clear and convincing evidence that Dawn's separate estate is entitled to equitable
reimbursement claims of $642,409 and $383,567, offset by $389,872 that the community paid for
income taxes on Dawn's separate property. (1) The trial court did not, however, place any liens against
the community for Dawn's equitable reimbursement claims.

 In her first equitable reimbursement claim, Dawn presented evidence that she paid
$642,409 out of her separate funds toward a margin line of credit that the McDaniels opened to pay
for the lot and construction of the Osprey house. Included in her evidence were schedules prepared
by her financial expert, John Anderson, tracing the payments to Dawn's separate property. (2) Maxwell
contends that this reimbursement claim should be offset by the benefit that Dawn received by living
in the Osprey house for two years. But this is not proof of any benefit to the separate estate. Instead,
it only shows a benefit to Dawn as a member of the community. A trial court may abuse its
discretion if it fails to consider offsetting benefits to the contributing estate. See Gutierrez, 791
S.W.2d at 663. Here, we find no such abuse. Instead, Dawn presented clear and convincing
evidence of $642,409 expended from her separate funds to benefit the community. According the
trial court "great latitude . . . in applying equitable principles to value a claim for reimbursement,"
Penick, 783 S.W.2d at 198, we do not find that the trial court erred in concluding that Dawn's
separate estate is entitled to an equitable reimbursement claim for $642,409.

 In her second equitable reimbursement claim, Dawn presented evidence that she paid
$383,567 out of her separate funds toward a mortgage, credit cards, income tax, "additional
homestead expenditures," and "payment on assets." Dawn's financial expert prepared schedules
tracing these payments to her separate property. Maxwell contends that Dawn is not entitled to
reimbursement on this claim not only because she failed to provide proof of offsetting benefits but
also because some of the payments may have been for living expenses, which are not reimbursable
under the family code. See Tex. Fam. Code Ann. § 3.409(2) (West Supp. 2004). Dawn agrees, at
least to a certain extent, that this claim is not as strong as the $642,409 claim. She states in her brief
that "even if [the claim] does not cleanly fit into a right of reimbursement claim," the offset between
her $642,409 claim and the community's $389,872 claim was appropriate. At oral argument, her
counsel stated that the $383,567 claim was not fleshed out at trial. However, he also argued that
Dawn presented proof that most of this claim was for unsecured debt, which is reimbursable. See
id. § 3.408(b)(1).

 Again, Maxwell does not dispute that Dawn expended this separate property toward
the community. He contends, however, that because Dawn's expert did not calculate the economic
benefit that her separate estate received from paying community debts, Dawn is not entitled to this
reimbursement claim. We find no demonstration in the record that the trial court failed to consider
the arguments and evidence of both parties as to Dawn's claim. The trial court took into
consideration benefits to the separate estate by offsetting Dawn's claims with the community's claim
for income tax paid on Dawn's separate property. In fact, the trial court merely offset the equitable
claims on both sides instead of imposing a lien against the community for Dawn's separate
contributions. According the trial court "great latitude . . . in applying equitable principles to value
a claim for reimbursement," Penick, 783 S.W.2d at 198, we do not find that the trial court erred in
concluding that Dawn is entitled to an equitable reimbursement claim for $383,567. We find the
evidence legally and factually sufficient to support Dawn's claims for equitable reimbursement and
therefore that the trial court's findings in favor of Dawn's claims for equitable reimbursement were
not in error. We overrule Maxwell's first and second issues.


 Economic Contribution Claim

 In his third and fourth issues, Maxwell contends that the evidence is legally and
factually insufficient to support the trial court's finding that Dawn's separate estate is entitled to an
economic contribution claim of $277,104 paid toward the Osprey house against remaining
community property, with a lien against a community $250,000 certificate of deposit. Maxwell does
not dispute that Dawn expended separate funds toward the Osprey house, nor does he dispute that
Dawn has a legitimate claim for economic contribution. He instead disputes the calculation of the
amount of the contribution.

 A marital estate that makes an economic contribution to property owned by another
marital estate has a claim for economic contribution with respect to the benefited estate. Tex. Fam.
Code Ann. § 3.403(a) (West Supp. 2004). The formula for calculating the amount of the economic
contribution of one marital estate to property owned by another marital estate is set forth in section
3.403(b) of the family code. See id. § 3.403(b) (West Supp. 2004). (3) Here, this calculation includes
a determination of the net equity in the community-owned property at the time of the first economic
contribution by the separate estate. See id. § 3.403(b-1)(1)(A) (West Supp. 2004).

 Maxwell specifically contends that the evidence is insufficient to support Dawn's
economic contribution claim because Dawn's expert, in calculating a net equity figure at the time
of Dawn's first economic contribution, assumed that the fair market value of the property was its
total cost at the end of the building project, which occurred after Dawn's first economic contribution. 
"Equity" is defined as "the amount computed by subtracting from the fair market value of the
property as of a specific date the amount of a lawful lien specific to the property on that same date." 
Id. § 3.401(3) (West Supp. 2004). The family code does not define "fair market value." 
Nevertheless, Maxwell asserts, without a citation to authority, that "substituting cost of property for
fair market value is not appropriate."

 Maxwell appears to be arguing that the fair market value of the property should be
lower at the time of Dawn's first economic contribution than Anderson stated. Using a lower fair
market value, however, leads to a greater benefit to the community for Dawn's separate economic
contribution, in turn leading to a higher value for Dawn's economic contribution claim. (4)

 The record contains sufficient evidence to support Anderson's estimate that the fair
market value of the Osprey house at the time of Dawn's first economic contribution was the total
cost of the house. According to the tracing schedules prepared by Anderson, Dawn's first economic
contribution was in May 2000. Maxwell introduced closing papers showing that the McDaniels sold
the house in May 2002. Dawn testified that she and Maxwell lived in the house for approximately
two years. Thus, it is reasonable to assume that Dawn's first economic contribution was close in
time to the completion of the house. We hold that Dawn presented sufficient evidence of the value
of her economic contribution claim and accordingly that the trial court's finding in favor of her
economic contribution claim was not in error. We overrule Maxwell's third and fourth issues.


 Characterization of the MSGI Holdback Money

 In his fifth and sixth issues, Maxwell contends that the evidence is legally and
factually insufficient to demonstrate that any of the property from the sale of stock termed the MSGI
holdback money is Dawn's separate property because the money was inextricably commingled with
community property. It follows, Maxwell argues, that the money should be characterized as
community property. "Generally, whether property is separate or community is determined by its
character at inception." Barnett, 67 S.W.3d at 111. When separate property produces income during
marriage, the income is generally community property. See Smith v. Lanier, 998 S.W.2d 324, 332
n.7 (Tex. App.--Austin 1999, pet. denied) (cash dividends earned during marriage on separate
property stock were community property) (citing Bakken v. Bakken, 503 S.W.2d 315, 317 (Tex. Civ.
App.--Dallas 1973, no writ)).

 Maxwell contends that Dawn "failed to introduce any testimony regarding the
allocation between the principal and interest" of the MSGI holdback money. We disagree. Dawn
presented evidence that the origin of the MSGI holdback money was stock that her father gave to her
as gifts, before and during the marriage. Property acquired before marriage and property acquired
during marriage by gift are separate property. Tex. Fam. Code Ann. § 3.001(1), (2) (West 1998). 
Dawn's father testified that he gave Dawn two separate gifts: 500 shares and 6,013 shares of stock
in Grizzard Advertising, the company for which he worked. At some point, MSGI bought Grizzard,
and Dawn sold some of her shares. MSGI held back a certain amount of money from all stock sales,
which was later distributed to the shareholders. Dawn's father testified that the total amount of the
"holdback" money was between $4 and $5 million and that the interest was approximately $740,000.

 Maxwell complains that although Dawn testified that she had received checks for the
holdback money from MSGI, she did not produce the checks or testify about their exact amount. 
However, John Anderson, Dawn's expert, calculated Dawn's percentage of the total MSGI shares. 
Based on these calculations and with the figures from Dawn's father, he determined that the principal
of the holdback money was $222,753.90. He calculated the interest accrued, which no one disputes
is community property, to be $35,736. Furthermore, both parties introduced into evidence the
McDaniels' 2000 federal income tax return, which included a statement from Dawn that she had
exchanged shares in Grizzard Advertising for shares in MSGI, along with cash and "a contingent
right to receive additional funds from funds held in escrow for future recalculations pursuant to the
Holdback Agreement."

 The trial court determined that the MSGI holdback money, with an approximate
balance of $200,000, is Dawn's separate property and that the interest of $35,736 is community
property. We hold that Dawn presented legally and factually sufficient evidence demonstrating that
the principal in the MSGI holdback money is her separate property and calculating the amount of
interest earned on the money during marriage. Accordingly, trial court's findings were not in error. 
We overrule Maxwell's fifth and sixth issues.


Division of Community Property

 In his seventh issue, Maxwell contends that the trial court abused its discretion by
awarding a disproportionate share of the community estate to Dawn. The trial court has wide
latitude to divide the marital estate "in a manner that the court deems just and right." Tex. Fam.
Code Ann. § 7.001 (West 1998); Schlueter v. Schlueter, 975 S.W.2d 584, 588 (Tex. 1998). The
division of the community estate is not required to be equal, Schlueter, 975 S.W.2d at 588, and the
court may consider many factors in making the division. Murff v. Murff, 615 S.W.2d 696, 699 (Tex.
1981); see O'Carolan v. Hopper, 71 S.W.3d 529, 532 (Tex. App.--Austin 2002, no pet.). When
reviewing a property division, an appellate court will assume that the trial court acted within its
discretion in dividing property. Vallone, 644 S.W.2d at 460. We will not disturb the trial court's
decision unless a clear abuse of discretion is shown. Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex.
1987) (citing Bell v. Bell, 513 S.W.2d 20, 22 (Tex. 1974)). The appellant bears the burden of
showing that the trial court's abuse of discretion caused a division of property so disproportionate
that the division was manifestly unjust and unfair. Hedtke v. Hedtke, 248 S.W. 21, 23 (Tex. 1923). 
The appellate court, therefore, will reverse a property division only if the error materially affects the
trial court's property division. Lewis v. Lewis, 944 S.W.2d 630, 631 (Tex. 1997) (citing Jacobs v.
Jacobs, 687 S.W.2d 731, 732-33 (Tex. 1985)).

 Maxwell argues that because of Dawn's equitable reimbursement claims, Dawn
received 88 percent of the community, leaving him only 12 percent. But the trial court did not place
any liens against the community for Dawn's equitable reimbursement claims. It merely offset the
equitable claims on both sides. The trial court ordered that the community property estate be divided
as set forth in an exhibit prepared by Dawn. According to that exhibit, each party was to receive
one-half of the proceeds from the sale of the Harris house. Of the other assets listed, Dawn received
$108,200 and Maxwell received $111,363. The trial court further found that Dawn's economic
contribution claim is entitled to a lien against a $250,000 community certificate of deposit. The trial
court awarded Maxwell all of his real estate business, which he began during the marriage, without
granting any interest in the business to Dawn.

 The division of the community estate is not required to be equal, and the court may
consider many factors in making the division. Murff, 615 S.W.2d at 699. Here, the trial court took
into consideration the extent that Dawn's separate property contributed to the community, a factor
that the trial court was entitled to consider. Before trial, Maxwell abandoned his separate property
claims against the community. We find no abuse of discretion in the trial court's division of the
community estate and overrule Maxwell's seventh issue. Having overruled all of Maxwell's issues,
we affirm the judgment of the district court.


CONCLUSION


 We hold that the evidence is legally and factually sufficient to support Dawn's
equitable reimbursement claims. According the trial court "great latitude . . . in applying equitable
principles to value a claim for reimbursement," Penick, 783 S.W.2d at 198, we do not find that the
trial court erred in concluding that Dawn is entitled to the claims. Concerning Dawn's economic
contribution claim, we hold that Dawn presented sufficient evidence of the value of her claim,
including the estimated fair market value of the Osprey house at the time of her first economic
contribution, and accordingly that the trial court's finding in favor of her economic contribution
claim was not in error.

 We further hold that Dawn presented legally and factually sufficient evidence
demonstrating that the principal of the MSGI holdback money is her separate property and
calculating the amount of interest earned on the money during marriage. Finally, the division of the
community estate is not required to be equal, and the court may consider many factors in making the
division. Murff, 615 S.W.2d at 699. The record reflects that the trial court took into consideration
the extent that Dawn's separate property contributed to the community, a factor that the trial court
is entitled to consider. We find no abuse of discretion in the trial court's unequal division of the
community estate. Having overruled all of Maxwell's issues, we affirm the judgment of the district
court.



 

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: March 18, 2004

1. Maxwell does not contest the equitable reimbursement offset to the community.
2. See, e.g., Norris v. Vaughan, 260 S.W.2d 676, 679 (Tex. 1953) (character of separate
property is unaltered by mutations and changes, as long as it is traceable and identifiable).
3. The amount of an economic contribution claim is equal to the product of:


(1) the equity in the benefited property on the date of dissolution of the
marriage, the death of a spouse, or disposition of the property; multiplied by


(2) a fraction of which:


 (A) the numerator is the economic contribution to the property owned by
the benefited marital estate by the contributing marital estate; and


 (B) the denominator is an amount equal to the sum of:


 (i) the economic contribution to the property owned by the benefited
marital estate by the contributing marital estate; and


 (ii) the contribution by the benefited estate to the equity in the property
owned by the benefited estate.


Tex. Fam. Code Ann. § 3.403(b) (West Supp. 2004).
4. To illustrate, Anderson calculated that Dawn's separate property had a 33 percent interest
in the equity of the sale of the Osprey house, based on equity of $741,103 at the time of the first
economic contribution:


$838,985 (equity at time of sale) x $370,772 (separate contribution) = 33.35%

 $370,772 (separate contribution) + $741,103 (equity at beginning)


Had the equity at the time of the first economic contribution been lower, for example $500,000, the
value of Dawn's economic contribution claim would be greater:


$838,985 (equity at time of sale) x $370,772 (separate contribution) = 42.57%

 $370,772 (separate contribution) + $500,000 (equity at beginning)