JULIA LANG ET AL V. SHELL PETROLEUM CORPORATION ET AL.

No. 7771. Decided February 4, 1942.
Rehearing overruled March 11, 1942.
(159 S. W., 2d Series, 478.)

*Sidney Benbow, Levert J. Able,* and *Fouts, Amerman & Moore,* all of Houston, for plaintiff in error.

It was error for the Court of Civil Appeals to affirm the judgment of the trial court and in not reversing and remanding same and in not holding that the claimants were invested with a superior legal and equitable title to an undivided one-half interest in the land in question. Webb v. Reynolds, 207 S. W. 914; Browne v. Fidelity & Deposit Co. of Md., 98 Texas 55, 80 S. W. 593; Neal v. Holt, 69 S. W. (2d) 603; W. C. Belcher Land & Mort. Co. v. Clark, 238 S. W. 685.

*Gerald C. Mann,* Attorney General, *R. E. Kepke* and *Glenn R. Lewis,* Assistants Attorney General, *Carlos B. Masterson,* of Angleton, *A. E. Groff,* of Houston, *Thompson, Mitchell, Thompson & Young, Truman Post Young, Thomas L. Croft* and *Calvin A. Brown,* all of St. Louis, for defendants in error.

The interest of plaintiffs, if any, was a mere equitable right to elect to follow the notes and impose a constructive trust on the land in controversy, which right when asserted in an action of trespass to try title is subject to the defense of laches, and plaintiffs by their conduct have acquiesced in and ratified the action of their mother and the executor of the will in transferring title. Carlisle v. Hart, 27 Texas 350; Conley v. Abrams, 7 S. W. (2d) 674; Mayes v. Manning, 73 Texas 43, 11 S. W. 138; Allen v. Atchison, 26 Texas 616.

MR. JUSTICE CRITZ delivered the opinion of the Court.

As presented in this Court, this suit involves a claim of the plaintiffs in error, Julia Lang, Joe Cleveland, D. C. Cleveland, Emil Cleveland, John Lang Cleveland, Florence Cleveland, and Lottie Cleveland, to an undivided one-half interest in 400 acres of land in Brazoria County, fully described in the pleadings in

the district court. The 400-acre tract was leased by the Board for lease of Texas Prison Lands to Shell Petroleum Corporation on March 14, 1934, and such lessee has developed such land so that it was producing oil in paying quantities at the time this suit was filed and tried. As we interpret this record, considered in the light of the judgment of the trial court, the following facts appear:

On April 2, 1884, John Lang conveyed this land to Anthony Thomas, for a recited consideration of $1,721.40. To secure the payment of this consideration, Anthony Thomas executed a deed of trust to W. W. Garnett, Trustee for John Lang. On October 2, 1893, John Lang executed to Anthony Thomas a second deed. In this deed the vendor's lien was retained to secure ten notes, in the principal sum of $170.00 each, payable to John Lang, one note each year from one to ten years from date. This instrument recites that the ten notes above mentioned were executed to take up and renew the indebtedness evidenced by the first deed, and the deed of trust executed therewith.

John Lang died on December 7, 1899, leaving a written will. This will made certain special bequests, not material here, and then bequeathed the entire residuary estate of John Lang one-half to Julia Lang, and the other half to the six children of Julia Lang. It appears that Julia Lang was a negress. She had six children. Julia Lang was a daughter of John Lang, and the father of her six children was a white man, named D. C. Cleveland. John Lang was a white man. One John Juliff was named in the will of John Lang as independent executor of such will and estate.

As fully authorized by Article 3339, R. C. S. 1925, John Juliff, the independent executor named in the John Lang will, duly offered it for probate in the county court of Brazoria County, Texas. Certain relatives of John Lang, deceased, contested such probate. Trial in the county court resulted in a judgment admitting the will to probate. The contestants appealed to the district court. While such appeal was there pending, settlement was made with the contestants, and the will was admitted to probate in the district court without further contest.

On March 9, 1900, John Juliff duly qualified as independent executor of such will and estate. Later an inventory and appraisement of the estate of John Lang, deceased, was duly re-

turned into the county court, and duly approved. Among the assets listed therein, running into many thousands of dollars, are five of the vendor's lien notes for $170.00 each, given by Anthony Thomas to John Lang as consideration for the land here involved. Such notes were the last five of the series of ten notes already described. We assume the first five had been paid. We think this record is sufficient to show that the law firm of Wilson, Hutcheson & Masterson represented John Juliff, and the residuary legatees under the will, in the probate proceedings incident thereto, in the county and district courts of Brazoria County.

In August, 1900, Julia Lang petitioned the county court of Brazoria County, Texas, to be appointed guardian of the estate of her six minor children, being the children named as beneficiaries in the John Lang will supra. In this petition it is stated that such children were possessed of an estate consisting of real and personal property, of the probable value of $50,000.00. Such petition also shows that such estate was derived from the will of John Lang, deceased. In September, 1900, Julia Lang was duly appointed guardian of the estate of her above-named children, and during the same month she duly qualified as such by taking the oath and giving the bond required by law.

In October, 1901, Julia Lang, as guardian aforesaid, filed an inventory, appraisement, and list of claims. At the same time she, as guardian, filed in the county court an instrument in writing or petition. In this petition she made known to the court that all the property of her wards, or children, was derived from the estate and under the will of John Lang, deceased. It is then recited in such instrument: That said will, after certain bequests, left one-half the residuary estate to the guardian, Julia Lang, and the other half to her six children; that John Juliff was named independent executor of said will and estate; that a contest was filed contesting the probate of such will; that it became necessary for counsel to be employed to represent the interests of petitioner and her said children, to secure the probate of such will; that petitioner and her children were without means to employ counsel and pay counsel fees; that petitioner, desiring that said will be probated, so that she and her six children might derive and receive the property bequeathed to them, entered into a contract with Eugene J. Wilson, J. C. Hutcheson, and Branch T. Masterson, attorneys at law, by the terms of which said at-

torneys were to secure the probate of the John Lang will, and that petitioner agreed and bound herself to give and grant to said Wilson, Hutcheson & Masterson, as a fee for their services, one-third of the estate bequeathed to her and her children. Such instrument then further states: That said lawyers were fully successful in securing the final probate of the John Lang will; that her contract with the above-named attorneys was made with the knowledge, consent, and approval of John Juliff, the executor named in such will and the proponent for its probate; that said lawyers rendered valuable and laborious services; that the compensation contracted for was reasonable and equitable, and that by procuring the probate of such will the above-named lawyers saved for petitioner and for her said children the property to which they were entitled under the John Lang will.

The petition above mentioned further states that after the will of John Lang had been admitted to probate, the petitioner, acting for herself and as guardian of the estate of her said children, made and agreed upon a partition of said residuary estate of John Lang, deceased, with said Wilson, Hutcheson & Masterson, and that in such partition certain described properties were allotted to and awarded to the above-named attorneys. The petition then lists the properties which it states had been turned over to such attorneys. Among such properties were the five vendor's lien notes above described, executed by Anthony Thomas and payable to John Lang. The petition then states that the services of the above-named attorneys were equally beneficial to the petitioner and her six children, and that it would be fair, just, and equitable for the estate of such children to bear one-half the attorneys' compensation so paid. Such petition then states that petitioner, believing that said children should bear one-half of such compensation paid to said attorneys, and believing that your petitioner would have and own an undivided one-half of all said property allotted and awarded to said petitioner and her said children in said partition with Wilson, Hutcheson & Masterson, has only inventoried and listed an undivided one-half of said property as the property of said children. Petitioner says that, by reason of the premises, petitioner is entitled to one-half of said property so listed and warded to her and her said children in said partition, and that said children jointly are entitled to the other half of said property.

The prayer in the above petition prays that the contract entered into with Masterson and his associates be approved,

and that the estate of the minors be charged with and made to bear one-half of said compensation accorded said attorneys, and that the partition so made with said attorneys be in all respects approved, and it be decreed that petitioner own one-half of said property, and the children the other half; and that the inventory, appraisement, and list of claims of the estate of said minors, filed with the petition, be approved.

On October 22, 1901, the county court of Brazoria County entered an order approving the inventory, appraisement, and list of claims by the above-named guardian. Also, such order approved the contract entered into by Julia Lang with Wilson, Hutcheson & Masterson, attorneys, and the charging of the minors' estate with one-half, the one-third of the residuary estate transferred to Wilson, Hutcheson & Masterson. The order also approved the partition so made by Julia Lang with said attorneys. The order then recited that the minors and Julia Lang owned the remaining assets,—one-half to Julia Lang, and one-half to the six minor children.

The orginial vendor's lien notes above described, executed by Anthony Thomas and payable to John Lang, being the last five of such series, and being the notes listed among the assets of the John Lang estate by the executor, were found among the papers of Branch T. Masterson, deceased. They were all endorsed in blank by John Juliff, as independent executor of the John Lang estate. On May 9, 1903, Anthony Thomas and wife conveyed the 400-acre tract of land here involved to Branch T. Masterson. This deed recites that it was made in consideration of the cancellation by Branch T. Masterson of the five vendor's lien notes above described. It is also recited in such deed that such notes were due and unpaid, and that Anthony Thomas was unable to pay the same.

We think that this record is sufficient to show that these notes were endorsed in blank by John Juliff, executor, and delivered by him to Wilson, Hutcheson & Masterson, and that Masterson acquired the interests which Wilson and Hutcheson owned therein. It follows that when Anthony Thomas and wife conveyed this land to Masterson, he, Masterson, held such notes transferred by the independent executor. In this connection, we think that if the statements made in the instrument above described, filed by Julia Lang in the probate court, are considered as evidence, it shows that John Juliff endorsed in

blank and delivered to Wilson, Hutcheson & Masterson the five notes here involved, as a part of their fee in representing John Juliff in his application and efforts to probate the John Lang will. Of course, when John Juliff offered such will for probate, his efforts resulted in benefit to the beneficiaries named therein. We think this record further shows that, in making his contract with such attorneys, John Juliff had the consent of Julia Lang, both for herself and as the mother of her six minor children.

As we understand this record, in 1912, after the six children of Julia Lang became of age, they had a partition with their mother and with each other. In this partition each child accepted the part allotted to him or her; and, so far as this record shows, no child made any objection or claim against the mother regarding the transactions had by her and the independent executor with Wilson, Hutcheson & Masterson. No child made any effort to charge the mother with these notes, or any part thereof, of any other property conveyed to Wilson, Hutcheson & Masterson. In this connection, we think that, if the partition and order above described relating to the property transferred to Wilson, Hutcheson & Masterson gave any notice to the members of the Prison Board or Shell Petroleum Corporation, they certainly gave the same notice to the children who partitioned between themselves and with their mother as above shown.

It appears that the above-described land has passed by mesne conveyances from Branch T. Masterson to the Texas Prison Board, where the title now rests; unless it belongs to the children of Julia Lang. Shell Petroleum Corporation holds a mineral lease on same, which is valid; unless the land belongs to these plaintiffs in error.

As we understand this record, the plaintiffs in error contend that they are the real owners of an undivided one-half interest in the above-described 400 acres of land. If we properly interpret their brief and argument, this claim of ownership is based on the theory that an undivided one-half interest in the above-described five notes passed to the children of Julia Lang under the will of John Lang, deceased; that such ownership was never divested out of such children; that Branch T. Masterson never became the real owner of such one-half interest, though he did come into possession of such notes; that there-

fore, when Branch T. Masterson took a conveyance of such 400 acres of land from Anthony Thomas, in consideration of the cancellation of such notes and the lien securing same, he took as a trustee for the Julia Lang children as to the one-half interest in this land purchased with their one-half interest in the notes cancelled.

After a careful consideration of this record, we think that, when considered as a whole, it shows: That John Lang, a very wealthy man, died leaving a written will; that such will constituted John Juliff independent executor of the estate covered thereby; that such will bequeathed the residuary estate, which was of the value of many thousand of dollars, one-half to Julia Lang, the daughter of the testator, and one-half to Julia Lang's children, the grandchildren of the testator; that John Juliff, as named independent executor therein, offered the John Lang will for probate; that the probate of such will was contested by the heirs of John Lang, deceased; that it became necessary for John Juliff to employ attorneys to represent him in such probate proceedings; that John Juliff, acting with Julia Lang, employed the law firm of Wilson, Hutcheson & Masterson to represent him, as executor, in securing the probate of such will; that John Juliff and Julia Lang agreed to pay the above-named attorneys a fee of one-third the estate of the residuary legatees for their services; that such attorneys complied in all respects with their contract of employment, and successfully represented the executor, and thereby also successfully represented all the residuary legatees in such will; that John Juliff complied with his contract with said attorneys, and paid them the fee he had contracted to pay; that such fee was charged against Julia Lang and her children, in proportion to their respective interests in the John Lang estate; that, as part of such fee so paid, the five notes here involved were endorsed in blank and delivered by the executor to the above-named attorneys; that Wilson and Hutcheson conveyed and assigned their interests in such notes to Masterson; and that Masterson took for himself reconveyance of this land, in consideration of the cancellation of such notes.

Before proceeding further we deem it expedient to announce certain well-known rules of law, which we think operate to decide this case. Such rules are:

1. Under our statutes, an executor named in a will has authority to present same for probate. Article 3339, R. C. S. 1925.

2. An independent executor may, without order of the probate court, do any act which an ordinary executor or administrator could do with or under such an order. 13 Tex. Jur., p. 771, sec. 193; Carlton v. Goebler, 94 Texas 93, 58 S. W. 829; Dwyer v. Kaltayer, 68 Texas 554, 5 S. W. 75; McDunough v. Cross, 40 Texas 251; Schramm v. Hoch (Civ. App.), 241 S. W. 1087, writ dismissed.

3. A reasonable attorney's fee is classed as an expense of administration, and the independent executor named in a will has a legal right to employ attorneys to represent him in the probate of the will which constituted him such executor. Further, such attorneys, when so employed, have a legal and valid claim against the estate covered by the will, for the payment of such fees, and the independent executor has the right to pay such claim. Articles 3691 and 3531, R. C. S. 1925; Pendleton v. Hare (Com. App.), 231 S. W. 334; Huff v. Huff, 132 Texas 540, 124 S. W. (2d) 327.

Under the facts we have recited, John Juliff, as the named independent executor in the John Lang will, had a right to present it for probate. Under such facts he also had a right to employ attorneys to represent him in such probate proceedings. Finally, such independent executor had the power and right, after the will was probated, to pay his attorneys out of the estate covered by the will. In this instance it is shown that the notes here involved were transferred to Wilson, Hutcheson & Masterson, attorneys, by John Juliff, in his official capacity, as a part of the fee he had contracted to pay such attorneys for representing him in the above-described probate proceedings. We think such transfer was not an act beyond the power of the independent executor, and that, therefore, such attorneys thereby acquired title to such notes. This being true, the children of Julia Lang had no interest therein at the time Anthony Thomas and wife conveyed this land to Branch T. Masterson. Of course, if such children had no interest in the notes, they can have none in the land.

■ So far in this opinion we have treated the facts stated in Julia Lang's petition in the guardianship proceedings as entitled to credit as legal evidence of the facts therein recited. If, however, it be held that such petition is a mere ex parte statement by Julia Lang so far as this case is concerned, and we do not think it necessary to pass finally on that question, still the same result would be reached in this case that would

be if we treated such petition as legal evidence. Stated in another way, if we should reject the Julia Lang petition as evidence of the facts stated therein, still this record contains sufficient evidence to sustain the title of Branch T. Masterson to the five notes here involved, at the time he received the deed from Anthony Thomas and wife in cancellation thereof. In this regard, disregarding the Julia Lang petition in the guardianship proceeding, it is shown: That John Lang conveyed this land to Anthony Thomas, reserving the vendor's lien to secure the payment of ten purchase money notes for $170.00 each; that John Lang died, leaving a written will which constituted John Juliff as independent executor thereof; that such will was duly probated; that John Juliff duly qualified as independent executor; that the last five of the above ten notes were listed as assets of the John Lang estate in the inventory and appraisement duly returned and filed by the independent executor; and that such inventory and appraisement was duly approved by the probate court. This record then shows that these five notes which formed the consideration for the Thomas deed to Branch T. Masterson were found among Masterson's papers after his death, bearing the endorsement, "John Juliff as independent executor of the John Lang estate." Also, this record shows that J. C. Hutcheson in 1901 assigned a 1/3 interest in these notes to Branch T. Masterson, and that in 1902 the heirs of Eugene J. Wilson assigned another 1/3 interest in these notes to Branch T. Masterson. Independent of any statements made in the Julia Lang petition in the guardianship proceedings, it is shown that Wilson, Hutcheson, and Masterson represented John Juliff in probating the John Lang will, and that they were paid a fee therefor out of the John Lang estate.

In our opinion, the above-recited record is sufficient to justify the trial court in concluding that Wilson, Hutcheson & Masterson received these notes from John Juliff, independent executor, as a fee for representing him in the probate of the John Lang will, and this independent of any statement made in the Julia Lang petition under discussion. We have already shown that an independent executor has power to offer a will, naming him as such, for probate, and further that such executor has power to pay a reasonable fee for such services out of the estate for which he is acting.

■ The record in this case shows that in 1916 the estate of John Lang, deceased, was partitioned by court decree between Julia Lang and her children. Each owner accepted the part set

aside to him or her, and no child, though charged with notice, made any objection to the transaction which Julia Lang had had with Wilson, Hutcheson & Masterson. No child made any effort to charge Julia Lang with any wrongful act, and no child made any effort to charge Julia Lang with having wrongfully conveyed any part of his or her estate to the above-named attorneys. On the other hand, each child accepted the part partitioned to him or her, with the benefits he or she had received from the transactions of Julia Lang and John Juliff with the above-named attorneys. Also, from 1916 to about 1939 no child raised any objection to what had been done by John Juliff or Julia Lang, or either of them. Under such a record, we think the children of Julia Lang acquiesced in and ratified the actions of John Juliff and Julia Lang above detailed. De Rodriguez v. Hinnant (Com. App.), 267 S. W. 471.

The opinion of the Court of Civil Appeals holds that any interest the children of Julia Lang may have acquired in this land by reason of this conveyance to Masterson by Thomas and wife was barred by laches. We express no opinion on that question. 141 S. W. (2d) 667.

For the reasons stated in this opinion, the judgment of the Court of Civil Appeals, which affirms the judgment of the district court, is affirmed.

Opinion delivered February 4, 1942.

Rehearing overruled March 11, 1942.