The STATE of Texas, Petitioner,

v.

L. C. TRAYLOR et al., Independent Executors of the Estate of M. G. Perry, Deceased, Respondents.

No. A–9403.

Supreme Court of Texas.

Dec. 11, 1963.

Waggoner Carr, Atty. Gen. of Texas, Ben M. Harrison and J. Arthur Sandlin Asst. Attys. Gen., Austin, for petitioner.

Matthews, Nowlin, Macfarlane & Barrett, Herbert D. Kelleher, San Antonio, for respondent.

HAMILTON, Justice.

This is an appeal from the judgment of the District Court of Bexar County approving the final account of independent executors and directing distribution of assets of testator's estate.

The will of M. G. Perry named his wife, Johnnye D. Perry, and two others as independent executors and devised to them as trustees one-half of all property, separate and community, on hand at his death in trust for Mrs. Perry for life, remainder to a charitable foundation created by the Perrys during the life of Mr. Perry. The other half he devised to the executors in trust for the foundation, that trust also to terminate on Mrs. Perry's death.

The testator having attempted to dispose of all the community property, Mrs. Perry

elected not to take under his will, but to take her one-half of the community property.

The independent executors filed their final account in the probate court containing an inventory of all property received by them during the administration of the estate, including all the community estate of the testator and his wife, which is shown to have a value in excess of two million dollars. The account contained recitations concerning the acquisition and nature of certain properties on hand which showed that a considerable amount of the estate was the separate property of the testator; that because of the difficulty and expense of attempting to establish and assess the value of the very large community claims for reimbursement that would exist against certain real property should it be treated as separate property of the testator, they had treated all property as community property in handling the estate. The separate property of the testator consisted of land, royalties, oil company stock and income from separate property during administration of the estate. The account asserted that the best interests of the estate would be served by treating the land as community properties and dividing them equally between Mrs. Perry and the testamentary trustees; and further, that the remaining assets held by them in community with the survivor should be divided in kind. The independent executors requested that the account be approved and that an order be entered directing partition and distribution to the persons entitled to receive the property.

The Attorney General was made a party to the proceeding under Article 4412a, Vernon's Ann.Civ.St., and he objected to the account on the ground that certain items of property listed in the account as community property were actually separate property and that they should be set over in full to the trustees of the testamentary trust.

The probate court approved the account filed by the independent executors and ordered the property on hand to be divided equally between Mrs. Perry and the testamentary trustees. The Attorney General appealed to the District Court, which also approved the final account and ordered the property distributed equally. The Attorney General excepted to the judgment of the District Court and appealed. The Court of Civil Appeals has affirmed. 362 S.W.2d 175.

The Attorney General assigns error on the ground that the undisputed evidence shows that a very substantial portion of the estate was the separate property of the testator, yet the executors and the courts below have treated it as community property and ordered an equal division between the widow and the testamentary trustees. Therefore, the Attorney General seeks a remand of the case for a further development of the facts. The Attorney General also asserts that a question of title to realty is involved, hence neither the probate court nor the District Court on appeal had jurisdiction and the case should be dismissed.

In order to properly understand this case, it is necessary that the type of proceeding be carefully defined. Furthermore, it must be noted that the probate court has only that jurisdiction conferred upon it by the Probate Code.

At the outset, attention should be called to § 145 of the Probate Code, V.A.T.S., which provides as follows:

> "* * * When such will has been probated, and the inventory, appraisement, and list aforesaid has been filed by the executor and approved by the court, as long as the estate is represented by an independent executor, *further action of any nature shall not be had in the court except where this Code specifically and explicitly provides for some action in the court.*" (Emphasis added.)

Hence, the ordinary method of presentment and payment of claims [1] against an estate under independent administration does not

---

1. Probate Code § 294 et seq.

apply since such method is not made specifically applicable to an independent executor.

The authority for the action filed by the respondents is obviously § 150, Probate Code, which is made explicitly applicable to an independent executor. That section provides as follows:

"§ 150. *Partition and Distribution*

"If the will does not distribute the entire estate of the testator, or provide a means for partition of said estate, the independent executor may file his final account in the court in which the will was probated, and ask for partition and distribution of the estate; and the same shall be partitioned and distributed in the manner provided for the partition and distribution of estates administered under the direction of the court."

Estates administered under the direction of the court are partitioned and distributed under § 373 et seq. of the Probate Code.

Section 377, Probate Code, provides what facts are to be ascertained at the hearing upon application for partition and distribution. They are as follows:

"* * *

"(a) The residue of the estate subject to partition and distribution, which shall be ascertained by deducting from the entire assets of such estate remaining on hand the amount of *all debts* and expenses *of every kind* which have been *approved or established by judgment,* but not paid, or which may yet be established by judgment, and also the probable future expenses of administration.

"(b) The persons who are by law entitled to partition and distribution, and their respective shares.

"(c) * * *." (Emphasis added.)

After making the above findings, the probate court should make a decree under § 378, Probate Code [2]. If the probate court is of the opinion that the estate should be partitioned, it should appoint three commissioners under § 380, Probate Code, who would make a fair, just and impartial partition and distribution of the property.

The judgment of the probate court purports to recognize the existence of the community claim for reimbursement and sets over one-half of the separate property of the testator to the community survivor to satisfy such claim. In order to be authorized by the Probate Code, such claim must have been approved or established by judgment. The community claim for reimbursement has not been established by a prior judgment, hence the question is whether it has been approved. It is not explicitly asserted by respondents that the community claim has been approved by the independent executors, but it is implicit in the relief they are seeking.

The power of an independent executor to approve claims against an estate of a decedent is limited in certain situations affecting charitable trusts by Art. 4412a, Sec. 5, Vernon's Annotated Texas Civil Statutes [3].

2. "§ 378. Decree of the Court
"If the court is of the opinion that the estate should be partitioned and distributed, it shall enter a decree which shall state:
"(a) The name and address, if known, of each person entitled to a share of the estate, specifying those who are known to be minors, and the names of their guardians, or the guardians ad litem, and the name of the attorney appointed to represent those who are unknown or who are not residents of the state.

"(b) The proportional part of the estate to which each is entitled.
"(c) A full description of all the estate to be distributed.
"(d) That the executor or administrator retain in his hands for the payment of all debts, taxes, and expenses of administration a sufficient amount of money or property for that purpose, specifying the amount of money or the property to be so retained."

3. "Sec. 5. Any dispute, claim or controversy of a character described in Section

That statute applies to any "dispute, claim or controversy of a character described in Section 2 of this Article [4], and affecting a charitable trust." Section 2 of Article 4412a applies to any suit or judicial proceeding having certain objects. However, Section 5 purports to apply to compromises, etc., "with or *without the intervention or approval of a court.*" (Emphasis added.) Hence Section 5 would apply to a compromise of claims *out of court* in the type of situation listed in Section 2, specifically Section 2(a):

"a. To terminate a charitable trust or *to distribute its assets to other than charitable donees,* or" (Emphasis added.)

Is the approval of the independent executors of the community claim for reimbursement on the basis of a compromise or settlement? The independent executors state in their final account that because of the difficulty and expense of attempting to establish and assess the value of the very large community claims for reimbursement should the property be treated as separate property of the testator, they have treated such property as community property in handling the estate. In other words, the independent executors are approving the surviving wife's share of the community claim for reimbursement in an amount equal to one-half the value of the testator's separate property. There was no showing that the claim was definite or certain, but the evidence shows the very opposite. By the

very assertions of the independent executors' final account, the community claim was not approved on the facts but was a compromise between what the facts might actually show upon investigation and what the difficulty and expense of establishing those facts might be. Such a compromise is not valid or binding without approval of the Attorney General under Article 4412a, Section 5.

The Probate Court could not consider the community claim as established since not based on a judgment or approved. Hence, Mrs. Perry stands in the shoes of a creditor asserting a claim against a decedent's estate under independent administration which the independent executors have not approved. In a case involving a claim against an estate under independent administration, this court stated in Rowland v. Moore, 141 Tex. 469, 174 S.W.2d 248 (1943):

" * * * The district court or county court, and not the probate court, has jurisdiction of all claims against the estate, as in any other cause of action not regulated by a special statute. * * * "

Nowhere in the Probate Code is the probate court given jurisdiction to adjudicate a claim against an estate being administered independently. There being no claim approved or established by judgment in favor of the community survivor, the probate court had no basis on which to award one-half of the testator's separate property to

2 of this Article, and affecting a charitable trust may be settled or compromised by agreement, with or without the intervention or approval of a court, provided, however, that no such compromise, settlement agreement, contract, or judgment shall be valid or binding unless the Attorney General is a party thereto and joins therein. * * * "

4. "Sec. 2. For and on behalf of the interests of the general public of this state in such matters, the Attorney General shall be a necessary party to and shall be served with process, as hereinafter provided, in any suit or judicial proceeding, the object of which is:

"a. To terminate a charitable trust or to distribute its assets to other than charitable donees, or

"b. To depart from the objects of a charitable trust as the same are set forth in the instrument creating the trust, including any proceedings for the application of the doctrine of cy pres, or

"c. To construe, nullify or impair the provisions of any instrument, testamentary or otherwise, creating or affecting a charitable trust, or

"d. To contest or set aside the probate of an alleged will by the terms of which any money, property or other thing of value is given, devised or bequeathed for charitable purposes."

Mrs. Perry. Therefore, that court and the District Court were in error in awarding one-half of the property of the testator to the widow. The Attorney General was correct in his contention that the separate property of the testator should be set over in full to the testamentary trustees of the charitable trust, subject, of course, to debts owed by the estate. Mrs. Perry's remedy to establish her claim where the Attorney General withholds his approval of its compromise is not in the probate court, but it is in the District Court in an original action against the independent executors, joining the Attorney General as a necessary party under Article 4412a, Section 2.

The judgments of the Court of Civil Appeals and the District Court are reversed and the cause is remanded to the District Court with directions to deny the relief sought by respondents without prejudice to their right to proceed in accordance with this opinion, and to certify its judgment to the probate court for observance.

GRIFFIN, NORVELL, WALKER and GREENHILL, JJ., dissenting.

SMITH, Justice (concurring).

I agree with the majority holding on the jurisdictional question. However, I contend that the Probate Court was without jurisdiction for an additional reason. The majority does not reach this additional ground. The case involves a title question. The State filed in the District Court a plea to the jurisdiction of the Probate Court on the ground that certain property belonging to the estate was the separate property of M. G. Perry, deceased, rather than the community estate. The plea to the jurisdiction points out that the assertion by the executors that such property is community property and subject to the claim of Mrs. Perry raises a title question affecting real property located within the State which the Probate Court has no jurisdiction to determine.

Because of the fact that the State did not file its plea to the jurisdiction until the cause reached the District Court on appeal, the respondents insist that the plea to the jurisdiction has been waived. I cannot agree. The pleadings in the Probate Court clearly show that an issue was presented requiring the trial of title to land to determine whether such land was separate or community. The opposition of the Attorney General of Texas to the final account describes certain specific items of real property and alleges that such items " * * * listed and claimed by the executors herein in the final account as community property are in fact separate property belonging to the Estate of M. G. Perry, deceased." The Attorney General pleaded that the separate property should be set over in full to the trustees of the testamentary trust.

The question of the jurisdiction of the Probate Court was raised by proper assignments of error in the Court of Civil Appeals. However, this being a question of jurisdiction which presents fundamental error, the question can be considered on appeal in the absence of an assignment. See Huston v. Cole, 139 Tex. 150, 162 S.W.2d 404, (1942); McCarty v. Duncan, Tex.Civ. App., 330 S.W.2d 899, (1960), no wr. hist.

The Attorney General has taken the position from the beginning of this case in the Probate Court that the final account should not be approved because a number of items described in that account were separate property. It has been pointed out that the facts show that it would be unfair to take the separate property of the deceased and divide it up fifty-fifty as if it were community. Unquestionably, a substantial portion of the property involved is separate property. The property designated as the "Big Farm," (2480 acres) was acquired by M. G. Perry before marriage. The status of this property is fixed as separate property under the "inception of title" rule. See Colden v. Alexander, 141 Tex. 134, 171 S. W.2d 328 (1943). So long as separate property can be definitely traced and identified it remains separate property regardless of the fact that the separate property may undergo mutations and changes. See Norris v.

Vaughan, 152 Tex. 491, 260 S.W.2d 676 (1953).

It may well be that since some of the property was purchased on credit before marriage, the community estate would be entitled to reimbursement as a matter of equity for such sums as are shown to have been applied on the prenuptial debts. This, too, is a question involving title and the final determination of the rights of the respective parties is to be determined upon equitable principles as to the amount of reimbursement. See Norris v. Vaughan, supra; Colden v. Alexander, supra. As was said in Colden v. Alexander, a claim for reimbursement would not create an equitable claim, unless it is shown that the expenditures by the community are greater than the benefits received. The Probate Court definitely cannot give complete relief. Where the Probate Court cannot give complete relief the District Court has jurisdiction. See Lauraine v. Ashe, 109 Tex. 69, 191 S.W. 563, 196 S.W. 501 (1917); Griggs v. Brewster, 122 Tex. 588, 62 S.W.2d 980 (1933).

The judgment in this cause should be reversed and the cause either dismissed without prejudice to the rights of the respondents to file an original suit in the District Court to determine the title to the property, or the cause should be remanded to the District Court for trial in accordance with the views herein expressed. Under no circumstances did the Probate Court have jurisdiction to lump the separate and community property together and order the same equally divided.

Respondents have gone into the Probate Court under Section 150 of the Probate Code requesting that that Court assume jurisdiction and decree to whom the estate should be distributed. They have urged that everything ought to be divided fifty-fifty, and have stated that treating the property as being all community would be agreeable both to the executors and to Mrs. Perry. They do not say that such an arrangement would be agreeable to the Foundation. Even if they did the agreement between the executors and Mrs. Perry was completely void under Article 4412a, Vernon's Annotated Civil Statutes. While I am in agreement with the Court in its holdings, I insist that the only law question in the case is one of title, hence neither the Probate Court nor the District Court on appeal had jurisdiction. Under the law, M. G. Perry was entitled to *will* all of his separate property, owned by him before marriage, plus one-half of his community property. Mrs. Perry seeks, in the Probate Court, to thwart the will of her late husband insofar as the separate property is concerned and to have all of the property declared community property. It may be very difficult, if this case is tried according to law, for the respondents to discharge their burden of establishing the credits, if any, to which the community estate is entitled. However, the burden must be discharged in a court of competent jurisdiction. Mrs. Perry elected not to take under her husband's will. She cannot establish that the property is all community by merely filing a final account and agreeing to treat all the property as community. In this connection, it should be pointed out that the Foundation Trustees did not agree in the waiver they signed to the correctness of the final account, they only agreed not to contest the account.

NORVELL, Justice (dissenting).

The Court has held that a wife's right to reimbursement for her share of contributions to the retirement of the purchase price of the separate property of the husband, as well as improvements thereon, must be established as would an ordinary claim in a suit against the independent executors of the husband's estate. It has further held that the Attorney General is a necessary party to such suit if the will of the deceased husband provides for a charitable trust. To me, an undesirable result has been reached, and this is demonstrated by the facts of this case which relate to a marriage of some thirty-four years standing and encompass innumerable transactions between husband and wife, and with third persons. In my

opinion, such result is neither required nor supported by any legislative action or prior decision of this Court. I am also persuaded that this Court's decision is not supported by the points of error contained in the application for writ of error.

At the outset, I would emphasize that a suit to determine if an allocation of property between a charitable trust created by will and a nontaking wife is just and reasonable is quite different from the establishment of a claim in the district court which places upon the wife, who exercises her legal right to claim her own property, the burden of minute accounting for income, labor expended and enhancement of property values over a long period of years. An over-strict requirement in this situation may serve to defeat the ends of justice and cause the wife to hesitate in claiming property which belongs to her when such choice may well mean long drawn out litigation with the Attorney General and consequent wasting of her estate, as well as that held by the charitable trust created by her husband. Hence, I say that this Court may have created a power in the Attorney General which that officer, in view of his contentions in this Court, may not have asserted was his.

I readily agree that it is a salutary policy and one long held in this state which recognizes the Attorney General's power to protect charitable trusts from waste and mismanagement. This power was recognized at common law. As stated by this Court in Boyd v. Frost National Bank, 145 Tex. 206, 196 S.W.2d 497, 168 A.L.R. 1326:

> "It is the duty of the Attorney General to invoke the powers inherent in our courts to prevent an abuse of the trust. These questions were set at rest in Powers v. First National Bank of Corsicana, [138 Tex. 604, 161 S.W.2d 273] which held that as respects a charitable trust, as distinguished from a private trust, it is an official function of the Attorney General of Texas under our Constitution and laws to intervene in court 'to enforce the trust in event of misfeasance or nonfeasance of the trustee.'"

At common law, the Attorney General could institute an original suit, intervene in a pending one or by pleading in a suit to which he is a party, raise the issue of mismanagement and wastage by the trustees of a charitable trust. He could also challenge the fairness of the allocation of property between a charitable trust created by a husband's will and a wife who decided not to take under the will; but the issue in this type of litigation is whether or not the allocation made by the independent executors is fair and equitable to charitable trust.

There is considerable discussion in the briefs as to Article 4412a, Vernon's Ann. Tex.Civ.Stats. This Act was passed by the 56th Legislature in 1959 (Ch. 115, p. 203) and the provisions thereof having any possible pertinency are as follows:

> "Section 1. As used in this Article, the term 'charitable trust' includes all gifts and trusts for charitable purposes.

> "Sec. 2. For and on behalf of the interests of the general public of this state in such matters, the Attorney General shall be a necessary party to and shall be served with process, as hereinafter provided, in any suit or judicial proceeding, the object of which is:

> "a. To terminate a charitable trust or to distribute its assets to other than charitable donees, or

> "b. To depart from the objects of a charitable trust as the same are set forth in the instrument creating the trust, including any proceedings for the application of the doctrine of cy pres, or

> "c. To construe, nullify or impair the provisions of any instrument, testamentary or otherwise, creating or affecting a charitable trust, or

> "d. To contest or set aside the probate of an alleged will by the terms of which any money, property or other

thing of value is given, devised or bequeathed for charitable purposes.

"Sec. 3. (Relates to the service of process.)

"Sec. 4. A judgment rendered in any suit or judicial proceeding referred to in this Article without service or process upon the Attorney General shall be void and unenforceable. Any such judgment shall be set aside upon motion of the Attorney General filed at any time thereafter.

"Sec. 5. Any dispute, claim or controversy of a character described in Section 2 of this Article, and affecting a charitable trust may be settled or compromised by agreement, with or without the intervention or approval of a court, provided, however, that no such compromise, settlement agreement, contract, or judgment shall be valid or binding unless the Attorney General is a party thereto and joins therein. The Attorney General is expressly authorized to join and enter into such compromises, settlement agreements, contracts, and judgments, as aforesaid, as in his judgment and discretion may be in the best interests of the public."

This Act is supplementary to the Attorney General's common law powers and must be construed with reference thereto.

Under the Act it is necessary to make the Attorney General a party to litigation which possesses certain defined characteristics, such as a suit to set aside the probate of a will, invoke the doctrine of *cy pres* and the like. The provisions of Section 5 are expressly restricted to the situations mentioned in the subdivisions of Section 2. The statute cannot be reasonably construed to mean that any and all claims that may be presented to independent executors cannot be settled by them without the intervention or the approval of the Attorney General. The statute so construed would effectively remove the estate from the executors' control and place upon the Attorney General

the considerable burden of approving any and all claims, such as funeral charges, expenses of the last illness and the like, which might be presented in connection with estates involving charitable trusts. A careful reading of the statute demonstrates that such is not the breath of the statute but that, on the contrary, it is carefully restrictive.

No provision other than Subdivision a, of Section 2 of the Act could possibly have any application to the situation before us. In a technical or accurate way of speaking, the improper allocation of assets claimed by the charitable trust to an adverse claimant is hardly a distribution of the assets of a charitable trust to other than charitable donees so as to bring the case within the provisions of Article 4412a, § 2, subd. a. However, the point may be of little practical importance in that a suit to prevent independent executors from wasting an estate by giving its property away could be maintained at common law. The suit is essentially one to prevent waste and if such a suit is to be maintained upon the factual situation of this case, it must be shown that the allocation between the charitable trust on one hand and the nontaking wife on the other is unjust and inequitable. This is true whether the Attorney General's authority is said to proceed from Article 4412a, § 2, subd. a or from the application of common law principles. If an unfair distribution be regarded as the distribution of the assets of a charitable trust to a noncharitable donee or as a dissipation of the assets of the trust, the result in the present proceedings is essentially the same. The issue in either case is that of the fairness of the proposed allocation.

The construction given by the Court to the statute with reference to the Attorney General's powers is so broad that State control and direction rather than State protection may be inferred therefrom. It is my opinion that the powers of the Attorney General over charitable trusts as construed in the past, have in the main proved adequate and satisfactory. I am persuaded that persons desirous of promoting good works

through the charitable trust device also desire to appoint and designate those who will carry out their programs. I am not so naive as to assume that independent executors or trustees, because of their designation as such, are always trustworthy and honest, but there is something to the thesis that unless and until it has been shown that they are dishonest, that they are mismanaging an estate, or dissipating its assets, those charged with management obligations by a trust settlor should be allowed to carry out their functions.

As above indicated, I seriously question the sufficiency of the points raised in this Court to support the broad holdings it has made. I would also point out that the all-important issue upon which litigation of this type should be decided was neither raised in the Court of Civil Appeals nor in this Court, namely, Was the allocation of properties between the charitable trust and the nontaking wife fair and equitable to the charitable trust? The County and District courts have impliedly held that it was. The Court of Civil Appeals has said that, "There is no assertion the proposed distribution is inequitable or that the foundation trust estate will be prejudiced thereby." That statement is correct and should control the disposition of this case. Evidence was introduced in the courts below which had as its purpose the sustaining of the proposition that the allocation was fair and equitable and the fact that this Court may consider such evidence as insufficient or wholly without probative force as a matter of law, will not supply a proper point raising the issue. In fact, the case below was tried by the Attorney General upon an entirely different theory.

The points of error contained in the application for writ of error filed in this Court are as follows:

"First point: The Court of Civil Appeals erred in upholding the action of the executors in treating the entire estate as community property and in making an equal division thereof with the widow, and in approving the action of the trial court adopting such arrangement, because the undisputed evidence shows that a very substantial portion of said estate was the separate property of the deceased.

"Second point: The Court of Civil Appeals erred in failing to hold that the trial courts were without jurisdiction of this suit because same was a 'trial of title to land,' original jurisdiction of which is given to the district court in Article V, Section 8, Texas Constitution.

"Third point: The Court of Civil Appeals erred in upholding the partitioning of said estate in the absence of appointment of Commissions to make such division and distribution as provided by the statutes of this state."

The first two points may be discussed together. We have intermingled estates, so to speak. Technically, there is an estate belonging to the testator which is now held by the charitable trust which he created. We have also an estate owned by Mrs. Perry, who refused to take under the will of her deceased husband. The problem is to untangle these intermingled estates and allot to the charitable trust its fair share of the property.

It is conceded that a portion of the property involved in this litigation was acquired by M. G. Perry before his marriage to Johnnye D. Perry. It is also conceded or conclusively shown that such property was subject to a large indebtedness at the time of the marriage of M. G. Perry and Johnnye D. Perry and that such indebtedness was ultimately paid off by monies belonging to the community. While the opinion concurring with the Court's order of reversal seems to take a contrary position, it is implicit in the holding of the Court that claims of the community against a separate estate may be settled by applying a portion or all of the separate estate to the satisfaction thereof. While the legal propo-

sition underlying this holding is not free from difficulty, I accept it upon the theory that the separate estate could undoubtedly be sold and the proceeds applied to the settlement of community claims. Section 234, Vernon's Ann. Probate Code; Lang v. Shell Petroleum Corp., 138 Tex. 399, 159 S.W.2d 478.

The acceptance of this view that the separate property of one marital partner may be given to the surviving partner in an allocation of the assets of the intermingled estates is, to my mind, controlling in the disposition of this cause. The issue then reached is whether or not the distribution and division of the property involved was fair and just to the charitable trust represented by the Attorney General.

The executors of the M. G. Perry estate came to the conclusion that the interests of both the M. G. and Johnnye Perry Foundation (a charitable trust set up under the will of M. G. Perry) and Mrs. Perry would be served by dividing the property owned by Mr. Perry (separate and community) and that owned by Mrs. Perry (community) into two separate moieties. This was done upon the theory that Mrs. Perry's share of the community contributions and the demands for reimbursements resulting therefrom were substantially the same in value as one half of the separate property owned by Mr. Perry. In other words, the separate property of Mr. Perry was used to offset the community demands for reimbursements of Mrs. Perry. If the allocation proposed by the executors be fair and equitable, it could be properly approved by the probate court and made effective by court decree in a suit to which the Attorney General was made a party.

While the final distribution of the assets of an estate is commonly referred to as a settlement of the estate, it is not necessarily accomplished by an agreement of the parties. In numerous cases, a plan proposed by executors or administrators may be contested by those claiming an interest in the estate. When this is done the result is an adversary proceeding. When a charitable trust is involved and the Attorney General is made a party, he may, as the representative of the charitable trust, agree to a plan of settlement or he may litigate the issue of the reasonableness and fairness of the executor's proposal. Article 4412a, § 5 does not place the Attorney General above the probate court and deprive that judicial body of the power and authority to approve a plan of distribution upon a finding that the same is just and equitable. The Attorney General may have the right to litigate, but he does not have the power to veto. He cannot prevent a judgment's being rendered in an adversary proceeding by refusing to agree to such judgment. When judgment is rendered in such adversary proceeding against his consent and over his protest, he has lost a lawsuit like any other litigant. Upon this point, I am in agreement with the Court of Civil Appeals. Of course, the Attorney General as a party litigant, had the right of appeal but as an appellant he must, in order to gain success, assert a ground of reversal under applicable procedural rules as is required of any other litigant.

As I understand the record, the judgment now appealed from was rendered in an adversary proceeding. Mrs. Johnnye D. Perry, who refused to take under her husband's will and claimed her interest in the community estate owned by her and her deceased husband, was the contending litigant on one side. The opposing party was the Attorney General representing the interests of the charitable trust.

A plan affecting such division and distribution has now been approved by orders of both the probate and the district courts. As heretofore indicated, the Attorney General in the Court of Civil Appeals did not assert that the distribution approved by the district court was inequitable or prejudicial to the charitable trust which he represented. His position was that the district court was without jurisdiction because a title matter was involved and that there was error in failing to set over to the charitable trust

that property which was conveyed to M. G. Perry prior to his marriage. It is asserted that an estate like the present one, part separate and part community, cannot be distributed by dividing the property (other than that which is admittedly community) between the charitable trust (representing the husband's estate) and the surviving widow because the probate court is not authorized to award the survivor part of the separate property in repayment or extinguishment of the survivor's reimbursement demands. If, on the other hand, the probate court may use separate property to offset community demands for reimbursements in distributing an estate, as I believe it can, then, as above indicated, the question occurs as to whether or not the distribution is fair and equitable.

Some factual background may make my position somewhat clearer. The principal item of separate property in dispute is a .5680-acre farm which at one time was owned by the partnership of Simmonds and Perry. M. G. Perry acquired his one-half interest in this farm before his marriage to Mrs. Perry in 1925. Mrs. Perry testified that immediately after her marriage she went to live upon this farm. At that time there was a residence where she and her husband resided, four small houses, some pens for cattle and tools used in farm operations. The dwelling house upon the premises was completed after the marriage. At that time the property was subject to a purchase money indebtedness of $280,000. She also testified that during the 1930 depression years they had "quite a struggle" meeting their financial commitments. Mr. and Mrs. Perry, during their marriage, maintained no separate bank accounts. It appears that Mr. Simmonds died in 1933 and that for sometime thereafter the ranch was operated by Mr. Perry in accordance with arrangement he had with Simmond's widow. The surface estate in the ranch was finally divided between Mrs. Simmonds and the Perrys in 1945. We have here an instance of a husband and wife living together for a period of some thirty-four years operating with a common bank account and working together to pay off a large indebtedness owed by the husband at the time of the marriage and ultimately through their joint efforts accumulating a substantial estate.

One witness described Perry's financial condition during the depression years as being "worse than broke." While undoubtedly the ranch referred to is a valuable piece of property on the present-day market, it is undisputed that Mrs. Perry, as a community partner, is possessed of large and substantial demands for the community reimbursements. One of the executors testified that in his opinion those claims would more than offset the value of that portion of Mr. Perry's separate estate which was awarded to her under the plan of settlement and distribution. However that may be, if, as a legal proposition, the probate court may award separate property in discharge of community demands for reimbursement, and has entered such order the same should not be set aside in the absence of an assertion that such settlement is not just and equitable to the parties concerned.

From a practical standpoint, the sustaining of the Attorney General's position would not only deprive the probate court from allocating separate property to the discharge of community demands for reimbursement, but would require the community claimant to show by proper voucher or other evidence each and every expenditure of money or services rendered over a long marital experience. This is a wholly impractical requirement because in most marriages accurate accounts between husband and wife are not kept and "mine" and "thine" concepts of property are not dominant considerations. All that should be required is a showing that the division and distribution approved by the court is fair and equitable. Both the probate and district courts have held that the proposed disposition in this case was fair and equitable. The contrary was not asserted in the Court of Civil Appeals, and we cannot try a dif-

214

ferent lawsuit than that decided by the Court of Civil Appeals.

As to the third point, I believe it is without merit because Articles 150 and 377 of the Probate Code have no application to the factual situation presented by this case. In Article 150 it provides a procedure to be followed "if the *will does not* distribute the entire estate of the testator * * *." Here the will makes a complete distribution of the entire estate of M. G. Perry. The problem is that of allocating the intermingled estates of M. G. Perry and Johnnye D. Perry. The independent executors must know what property belongs to the charitable trust before it may be turned over to the trustees chosen by the testator to manage the trust. In order to determine what property should go to the charitable trust under the will, it is necessary that M. G. Perry's interest in the intermingled estates be determined and set aside. In order to do this, it is incidentally necessary to allocate to Mrs. Perry her interest in the intermingled estate. What does not belong to the trust belongs to her. This allocation is a primary duty of the executors. It could be done by the filing of an inventory and appraisement of the M. G. Perry estate. It could be done in the manner followed in this case. It is essentially a probate matter in that the property subject matter covered by the will is sought to be determined. There is no contention here that the probate court was without jurisdiction other than the assertion that there is a title dispute involved.

A plan of allocation of properties between what amounts to two estates was submitted to the probate court. That plan was there attacked in an adversary proceeding. The issues were determined favorable to the plan. There is no assertion here that the allocation was unfair or inequitable to the charitable trust. An affirmance of the judgment of the Court of Civil Appeals should follow. Accordingly, I respectfully dissent from the order of reversal.

GRIFFIN, WALKER and GREENHILL, JJ., join in the dissent.